## H. H. & S. F. SLATTER *v.* CARROLL and others.

Where a resident of another state, owning lands here, conveyed them to a trustee residing here, in trust to sell the same, and out of the proceeds, after paying certain specific sums, to remit the balance to a person residing at the grantor's domicil, to be by him applied rateably upon all the debts of the grantor ; and the grantor died insolvent, owing debts at his domicil and in other more distant states, and leaving executors who qualified at his domicil ; it was *held*, that any of his creditors might file a bill in this state, in behalf of themselves and all other creditors, against the trustee, the distributor of the fund, and the executors of the grantor ; to have the lands sold, the accounts of the trustee taken, and the fund distributed to the creditors.

The trust fund being real estate situated here, and the trustee a resident of this state, the jurisdiction of our court of chancery is unquestionable.

And where there are real assets, the court will not hesitate to administer them, although no personal representative has been appointed here.

The foreign executors may, in such a case, be made parties in that capacity.

It is no objection to entertaining the jurisdiction, that the creditor instituting the suit, resides at the place of the grantor's domicil.

The rule of distribution, must be that of the trust deed, when that is not repugnant to the laws of this state.

The court will direct the fund to be remitted, pursuant to the deed of trust, to the person therein designated, for distribution ; or will retain it and distribute it here, according to the circumstances of the case, in reference to the convenience of creditors and of the accounting parties.

A creditor of a copartnership cannot proceed in equity against the estate of a de-

ceased partner, without showing that he has exhausted his remedy at law against the surviving partners ; or that a resort to legal process against them would be unavailing.

This may be established by proof that the survivors are insolvent and have no visible property or assets liable to execution.

Nov. 15, 1844 ; Jan. 6, 7, 11, and 13, and April 11, 1845. Decided July 22, 1845.

THE bill was filed on the 11th day of December, 1841, by Hope H. Slatter and Shadrack F. Slatter, in behalf of themselves and all the other creditors of Luke Tiernan, late of the city of Baltimore, deceased, who might come in and contribute to the expenses of the suit ; for the purpose of enforcing the payment of a bill of exchange held by the complainants. The case, as made out by the pleadings and proofs, may be thus stated.

On the 19th of February, 1836, a bill of exchange for about $20,000, was drawn by a house in the state of Mississippi, on the mercantile firm of Tiernan, Cuddy & Co., transacting business in the city of New Orleans, payable twelve months after date. This bill was presented by the holder and accepted in New Orleans by J. McGill Cuddy, the resident partner of that firm, which at that time was a commercial partnership and consisted of Luke Tiernan and his son Charles, (who were also partners together in trade at Baltimore,) and Calvin Tate, of New Orleans. On the 28th of April, 1836, the bill was purchased of the holder, by J. R. St. John, Gregory & Co. at New Orleans, for value, and when due it was presented to the acceptors and protested for non-payment. St. John, Gregory & Co. transferred the bill on the 24th of June, 1839, for its full value, to the complainants, one of whom resided in New Orleans and the other in Baltimore.

Tiernan, Cuddy & Co. failed in December, 1836, owing debts to the amount of five or six hundred thousand dollars. Luke Tiernan withdrew from that firm on the 1st of August, 1836, and died November 10th, 1839. Cuddy, another of the partners, died in the summer of 1840. C. Tate was insolvent after the failure of the firm until this suit, and destitute of property. Charles Tiernan, though domiciled in Baltimore, spent much of

his time after the failure, in New Orleans, and was appointed the syndic there for winding up the partnership concerns.

In November, 1840, the complainants commenced a suit against C. Tiernan as the surviving and liquidating partner of Tiernan, Cuddy & Co., in the Commercial Court of New Orleans, and on the 10th of May, 1841, recovered a judgment against him for the amount of their demand. An execution was issued, on which there was collected about $600. By the laws of Louisiana, they could on such a judgment, collect from the joint property of the partners, and from the separate property of the partner served with the process.

Tiernan, Cuddy & Co. were indebted to Luke Tiernan in an amount exceeding three hundred thousand dollars, and Charles Tiernan was wholly insolvent in 1840, and without any property subject to an execution at law. Soon after the bill in this cause was filed, he applied for the benefit of the insolvent laws of Maryland.

Luke Tiernan became embarrassed by the failure of the New Orleans house, and at his death was unable to pay his debts, including his liabilities as a partner in Tiernan, Cuddy & Co. On the 24th of September, 1839, he then being the owner of several thousand acres of land in the county of Alleghany and its vicinity in the state of New York, (portions of which had been contracted to be sold to the settlers on the tract,) Luke Tiernan and his wife executed a conveyance of the same in fee to Charles H. Carroll of the county of Livingston in the same state, in trust to execute deeds in fulfilment of the contracts of sale previously given, on receiving the price, and to contract to sell, and to sell and convey the residue of the lands from time to time, in his discretion, on certain terms of credit specified. Out of the net proceeds, the trustee was first to remit $15,000 to Alexander Neill of Baltimore, to be by him paid to creditors of Luke Tiernan. He was next to remit $12,000 to the wife of the latter, or to such persons as she should appoint, in consideration of her releasing her dower in the lands. The trustee, in the next place was to pay $4450 to Luke Tiernan Brien of Baltimore. And he was to remit the residue of the proceeds of the lands, from time to time to Alexander Neill, to be by him applied to the payment of all

the debts of Luke Tiernan, and if there were not sufficient to pay them all, then divide such proceeds amongst them rateably and in proportion. If there were a surplus, it was to be paid by Neill to Luke Tiernan, his heirs, executors, administrators or assigns.

Under this trust deed, Mr. Carroll prior to the commencement of the suit, had received and remitted $8987 to Mr. Neill, towards the first sum payable out of the proceeds of the lands.

Luke Tiernan by his last will and testament, constituted Mr. Neill and Mr. Somerville of Baltimore, his executors; both of whom qualified, and received letters testamentary from the Orphans Court in the city of Baltimore. They advertised in that city in December, 1839, for creditors of the testator to present their claims.

The bill in this cause was filed against Mr. Carroll, Alexander Neill, and against Messrs. Neill and Somerville as executors, &c., of Luke Tiernan; and it prayed to have the complainants debt established, that the lands conveyed in trust should be sold and the proceeds applied according to the trust deed, and the accounts of the trustee taken.

All the defendants appeared and answered. Messrs. Neill and Somerville set up in their answer that the bill of exchange was void by reason of its having been given in Mississippi, for slaves purchased there to be removed from the state, contrary to the provisions of the constitution of that state; and that it was taken with notice of its consideration, by those who held it at its maturity. But the evidence did not sustain this defence.

When the cause was brought to a hearing, the proof relative to C. Tate's being destitute of property, was weak; and after the argument was closed, the complainants procured a stay of proceedings on motion, and took out a second commission to New Orleans, and obtained satisfactory evidence on the point. The cause was then brought to a hearing, *pro forma*, on the further testimony, in connection with that read before.

There was a great mass of documentary and other evidence; but it is deemed unnecessary to insert any more of it than has already been detailed.

*J. P. Crosby* and *B. F. Butler*, for the complainants.

*J. C. Devereux, Jr., C. O'Conor,* and *George Wood,* for the respective defendants.

The complainants made the following points.

I. The complainants are just creditors of the commercial firm of Tiernan, Cuddy & Co., of New Orleans, (of which firm Luke Tiernan was a member,) to the extent of the balance remaining unpaid, on the bill of exchange accepted by said firm, described in the bill, and having failed to obtain satisfaction of their said demand from the partnership property, the complainants are entitled to satisfaction, with other creditors of Luke Tiernan, whether joint or separate, out of his separate estate.

1. The drawees of the bill having their place of business in New Orleans, and the bill having been accepted and being payable there, and having also been there transferred to the complainants, the obligation and effect of the contract of the acceptors and the rights of the complainants as the holders of the bill must be determined by the law of Louisiana.

2. The acceptance of the bill by J. McGill Cuddy, one of the partners, in the name of the firm, bound the firm and each of its members jointly and severally.

3. At the time of the acceptance of the bill, Luke Tiernan was one of the partners, and as such he became liable jointly with the other partners, and also severally, for the amount of the bill.

4. The bill was transferred to St. John, Gregory & Co. for full value, who took the same in good faith, in the usual course of trade, and on the credit of the acceptors. In the hands of these holders the bill was unimpeachable, even if the consideration for which it was drawn was illegal, or though the bill was improperly accepted by Cuddy in the name of the firm. Besides, the consideration for which the bill was given was not illegal, and the acceptance was within the scope of the partnership, and was confirmed by the partners.

5. Complainants having paid a full consideration for the bill to St. John, Gregory & Co., are invested with all their rights and advantages, notwithstanding the bill was then past due. The bill is, therefore, unimpeachable in the hands of complainants, especially as they were informed by Charles Tiernan, one of the

partners, that it was good and would certainly be paid, and had no notice whatever of any objection thereto.

6. The judgment recovered by the complainants in the Commercial Court of New Orleans was regular, valid and effectual, by the laws of Louisiana, to establish the right of the complainants to recover from Charles Tiernan individually, and out of any partnership property of Tiernan, Cuddy & Co. in his possession, the amount of the bill, and as the execution issued on this judgment was returned unsatisfied, the complainants were under no obligations to pursue farther, the assets of the firm or of the surviving partners.

7. The proofs taken in the present case, independently of the record of the judgment in Louisiana, fully establish the liability of Luke Tiernan as one of the partners; and the complainants are, therefore, entitled to satisfaction out of his separate estate.

II. The lands conveyed by Luke Tiernan to the defendant Carroll by the trust deed of 24th of September, 1839, being situated within this state, and the trustee Carroll being a resident thereof, and the other defendants, Somerville and Neill, having appeared to and answered the bill, this court has ample jurisdiction to ascertain the complainants debt, and to compel payment thereof out of the trust fund; and under the circumstances of this case, complainants are entitled to a decree establishing their debt, and providing for its payment out of any proceeds of the trust property now in the hands of the trustees, Neill and Carroll, or either of them, and which may be properly applicable to this debt; and if there be no such proceeds now in hand, or the same shall not be paid over as required; then to a decree for the sale of the lands described in the trust deed, for the satisfaction of their debt.

The counsel for the defendants presented the following points.

I. The complainants have not established any demand against the estate of Luke Tiernan, deceased.

1. The acceptance was founded upon an illegal and immoral consideration, and is void.

2. Luke Tiernan was not a member of the firm of Tiernan, Cuddy & Co. at the time the bill was accepted.

II. The complainants not having exhausted their legal remedies against the surviving partner, cannot claim in equity against the estate of Luke Tiernan.

1. The demand of the complainants is a *joint* demand.

2. There is no evidence whatever of the alleged insolvency of Calvin Tate, the surviving partner.

III. The trust in question was created by Luke Tiernan, deceased, for the purpose of withdrawing his funds from this state, and distributing the same amongst his creditors at his own domicil, and according to the law and usage thereof. The complainants have shown no equity requiring our courts to prevent its literal execution.

IV. No fraud, breach of trust, or wrong of any kind being shown, and the complainant's suit being consequently for the sole purpose of preventing a distribution in Maryland, and compelling an account and distribution in this, the foreign forum, instead of the forum of the debt, the debtor, and the creditor; this court, for the maintenance of comity between the states, should decline entertaining cognizance of the case.

THE ASSISTANT VICE-CHANCELLOR.—The proofs in the cause, sufficiently establish the liability of Luke Tiernan as one of the acceptors of the bill of exchange in question.

At the time of its acceptance he was a member of the firm of Tiernan, Cuddy & Co., which was a commercial partnership, transacting business in New Orleans. The bill was accepted there, and it was there negotiated to the complainants, one of whom was a resident of New Orleans.

The testimony taken since the first hearing, renders it unnecessary for me to examine the interesting questions which were so ably argued, upon the nature of Luke Tiernan's liability according to the laws of Louisiana, and upon the adaptation of our local remedies to the exigencies of the obligations imposed by those laws.

Assuming that the acceptors of the bill are to be deemed jointly liable for its payment, as they would have been on its being drawn and accepted in this state; I cannot accede to the doctrine that the contract is to be considered *several in equity,* so far as to

permit the creditor to proceed at once against the representatives of the deceased partner without first exhausting the legal remedy against the surviving partners, or showing that a resort to such remedy would be fruitless.

Our law confers upon the survivors the title to all the effects of the copartnership, and with it the burthen of paying the debts. It would therefore be oppressive in many cases, and unjust in still more, if the creditors were permitted to resort to the deceased partner's individual property for payment, leaving the primary fund for such payment in the possession of the surviving partners.

I am aware that in the case of *The Trustees of the Leake and Watts Orphan Asylum* v. *The Executors of Augustine H. Lawrence,* (MS. October 27, 1841,) my learned predecessor gave his assent to the recent English decisions of Sir John Leach and Lord Brougham, which were cited in support of the doctrine of an immediate several liability in equity.

But on the appeal in that case, the Chancellor adhered to the decisions in this country.   He says, " The weight of authority, is in favor of the principle, that as the remedy at law survives, the creditor is bound to resort to his legal remedy against the surviving debtors, unless he can show some ground of necessity for coming into this court for relief against the estate of the deceased debtor."   And he declares his opinion to be, that the estate of a deceased copartner or joint debtor in the hands of his personal representatives, cannot be reached by a suit in this court, without stating in the bill of complaint, a sufficient excuse for not proceeding at law against the surviving debtors to obtain payment. (Chancellor's Opinion, May 7, 1844, MS.; 5 Barbour's Abstract of Chancellor's Decisions, 17.)

With the additional testimony furnished to the court, the complainants have brought their case within the established rule as stated by the Chancellor.

The partners at the date of this acceptance were Luke Tiernan, Charles Tiernan, J. McGill Cuddy, and Calvin Tate.   Luke T. died in 1839, and Cuddy in the summer of 1840.

The complainants proceeded in November, 1840, in the Commercial Court of New Orleans, against Charles Tiernan as the surviving and liquidating partner of the firm; (see Civil Code

of Louisiana, art. 1131 to 1135;) and recovered a judgment against him in that capacity, for the amount of the acceptance. On this judgment, an execution was issued, without effect; and after the present suit was commenced, another one was issued on which C. Tiernan says a small amount was collected. The lawyers who were examined as witnesses in Louisiana, testify that this judgment gave to the plaintiffs therein, the right to collect the amount from C. Tiernan individually, and out of the partnership property of Tiernan, Cuddy & Co. in his possession; and that such would be its effect though C. Tiernan had been previously appointed liquidator of the partnership concern and effects by the District Court.

C. Tiernan in his testimony speaks of himself as being such liquidator; but in another place he says he was appointed syndic by the court, on the application of a majority of the creditors. He once speaks as if he deemed liquidator and syndic as synonymous; and as there is no record evidence or reliable testimony produced to show that he was syndic, I shall have to assume that he was only the liquidator of the firm.

From the magnitude of this duty as disclosed in the proofs, it is probable that C. Tiernan spent most of his time in 1840 in Louisiana, although his residence was in Baltimore. At all events, I find neither allegation or proof that he had any property in Baltimore which the complainants could have reached by a suit at law in Maryland. Moreover the testimony is satisfactory that he was insolvent before November, 1840.

Thus it is shown that the remedy at law against the property of the firm, as well as against C. Tiernan, was tried and exhausted by the complainants.

It is also proved that Calvin Tate, the other surviving partner, became insolvent as early as 1839, and so continued until he was discharged under the bankrupt law in July, 1842. The complainants were therefore entitled to proceed in equity against the estate of the deceased partner, Luke Tiernan.

This brings me to the objections raised to their proceeding in the courts of this state.

Luke Tiernan resided and died in the state of Maryland. His

executors reside there, and received their letters from the Orphans Court in that state.

No administration has been taken out in this state. One of the complainants resides in Baltimore, and the other in New Orleans.

But these facts, which were made so prominent at the hearing, are quite subordinate to the grounds upon which this suit really stands.

In September, 1839, Luke Tiernan was the owner in fee of a large tract of land in Western New York, for the sale of which Mr. Carroll, a resident of this state, had long been his agent. At that time L. Tiernan conveyed the land to Mr. Carroll; vesting him with the whole title, in trust; 1. to sell the same from time to time on certain terms specified, and to receive the proceeds of the sales. 2. To remit of the first net proceeds received, the sum of $15,000 from time to time, to Alexander Neill of Baltimore, to be paid by the latter to L. Tiernan's creditors. 3. To remit $12,000 of the ensuing net proceeds to Mrs. Tiernan, or her appointee, and next $4450 for L. T. Brien; (which sums are undisputed obligations of Luke Tiernan's.) And 4. To remit all the residue of the proceeds of the sales to Mr. Neill, from time to time, to be applied by Neill to the payment of the debts due from Luke Tiernan. If the same proved insufficient to pay all his debts, then to be distributed rateably; and if there should be a surplus, Mr. Neill was to pay the same to L. Tiernan, his heirs, executors, administrators or assigns.

Under this trust deed, Mr. Carroll has sold a portion of the lands, and has remitted to Mr. Neill between eight and nine thousand dollars. Mr. Neill is one of the executors of Luke Tiernan, but he retains this remittance as receiver under the trust. He has nothing to do with it as executor.

Indeed, the executors have no interest or concern in the matter, except that on the improbable contingency of there being a surplus, they are entitled to receive it by force of the trust deed.

This is therefore, far from being a suit against the executors of L. Tiernan to compel them to pay this debt.

It is a suit by creditors of Tiernan, for whose benefit he has conveyed lands in this state to assignees, against those assignees, to have the assignment carried into effect. The non-residence of

the assignee who is made the sole distributor of the fund, does not affect the point of jurisdiction. The great mass of the fund is here. It is real estate, governed and to be disposed of, by our laws. The assignee who is to sell and convey it, and receive the price, resides here. Instead of there being any difficulty about the jurisdiction of this court, I do not perceive how any other court can administer this trust as against the principal trustee. The Court of Chancery in Maryland cannot reach or affect Mr. Carroll residing here, nor can their decree compel him to sell the lands or account for the proceeds.

But it is said that the legal representatives of L. Tiernan are necessary parties to a suit for closing the trust. As I have stated, there is a remote possibility of interest in those representatives, and this renders it proper that they should be made parties. I am not prepared to say that it would be held indispensible, in a case where the assignor was dead, and the bill charged that his estate was all assigned, and was hopelessly insolvent.

In this case the executors are not necessary parties in respect of the sale of the property, or the distribution of the trust fund to the creditors. The trust deed devolves the one duty upon Mr. Carroll and the other upon Mr. Neill; and it is through and by the latter, and not the executors, that a court of equity, whether here or in Maryland, would effect such distribution.

This being so, and there being an express direction in the assignment, to remit to Mr. Neill the surplus, as well as the fund designed for the payment of debts; would not the Court of Chancery here sufficiently discharge its duty, by ordering such surplus to be transmitted to Mr. Neill, or to be left in his hands, after providing for the demands of the creditors? Another mode open for its adoption, is to bring such surplus into court.

Without relying wholly upon this ground, I am satisfied that in view of all the circumstances, this court is warranted in proceeding with the parties who are now defendants.

It is agreed on all hands, that the two defendants who are described as executors of L. Tiernan, are such executors; appointed by his last will and testament, and duly qualified by the probate court having jurisdiction at the place of his domicil. They are therefore, the chief and principal legal representatives. If an ad-

ministrator were appointed here, his functions would be ancillary and subsidiary to those of the defendants. It not only appears to the court that Messrs. Neill and Somerville, are the persons to whom in the due execution of the trust, the surplus must be paid ; but Mr. Neill the executor and Mr. Neill the trustee, are one and the same person.

If the distributing trustee were not also an executor, and resided elsewhere than in Maryland, yet his voluntary payment of the surplus to the executors there, would be a compliance with his trust and a valid discharge. And if such payment were brought into question in this state, our courts would recognize the office of such executors, and their right to receive the surplus.

We do not, it is true, permit foreign executors to sue here in their representative capacity ; but suits against them for acts done in that capacity, are sometimes entertained.

In *McNamara* v. *Dwyer*, (7 Paige, 239,) the Chancellor sustained a suit for an account against a foreign executor, on principles which will amply sustain this bill. Here the executors have appeared, so that the suit is not liable to the objection of its proceeding in default of jurisdiction of their persons.

The trust in question being for the benefit of creditors generally, a non-resident creditor is as much entitled to file a bill to enforce it, as a creditor residing here.

The circumstance that one of these creditors resides in Baltimore, would have weight in determining whether the account and distribution should take place here, or should be remitted to Baltimore, provided this were a case of ancillary administration. (*Harvey* v. *Richards*, 1 Mason's R. 380.)

But this is a trust, in which the fund is here ; and here is the principal trustee. The Court of Chancery in this state, has jurisdiction over the subject matter, more appropriately and effectually than any court in another state can have. If the decree should direct a sale of the lands and a transmission of the funds to Mr. Neill, but half its duty to the creditors would be discharged ; for in order to compel him to proceed and distribute the fund, they would have to institute another suit against him in the equity courts of Maryland.

As to the argument of inconvenience derived from the domicil

of the debtor and the residence of the creditors, it is not decisive. The decree can be so framed and executed, as to enable creditors in Maryland to be notified as effectually, (so far as publication can give notice,) and to prove their debts with nearly as little expense, as if it were made in the courts of that state. While in point of fact, judging from the lists of the creditors of Tiernan, Cuddy & Co., the greater part of L. Tiernan's debts are due to persons in and about New Orleans ; and such persons would be more likely to receive notice, by way of advertisement, if the accounting were conducted in New York than they would if it were conducted in Baltimore, with equal convenience for proving their demands. The only advantage which occurs to me in favor of the Maryland forum is this, that creditors probably have placed their demands in the hands of agents in that state, in order to have them presented to the executors ; and those agents would be more likely to learn of a proceeding for an account against these trustees if it were conducted there, than they would if it were conducted here. But this may be obviated in a great measure by suitable directions in the decree of this court.

And as there should be but one accounting of both of these trustees, and one of them resides in this state ; it is my conclusion that such accounting and the consequent distribution ought to be made here.

There is no difficulty in this case growing out of different rules for distribution among the creditors of decedents, prevailing in Maryland, from those which are enforced in this state. The trust deed is the guide for the distribution ; and the rule it prescribes, is that of entire equality. It being a trust for the sale of lands in this state, any direction repugnant to our law would have rendered it voidable by the creditors.

It was suggested at the hearing that there was no ground for proceeding against Mr. Carroll the trustee ; and that the court ought not to interfere to expedite the closing of the trust contrary to the intent of L. Tiernan in creating it.

As to Mr. Carroll, the bill makes no charge of neglect of duty against him, nor is any imputed by a decree.

As to hastening the sale of the lands, there is no doubt of its propriety, or of the right of the court to direct it. Any specific

direction to the contrary made by an insolvent debtor in such an assignment, would subject it to the charge of an intent to delay and defraud creditors.

A decree for a sale will not impair the rights of the trustee. It effects in behalf of the creditors, what L. Tiernan should have directed in his assignment, and precisely what would have been accomplished ere this by due process of law, if no conveyance in trust had been made.

There must be a decree establishing the complainants debt as against the trustees and the fund ; and directing a sale of the lands and a conversion of the trust assets.

And the usual provisions, together with special clauses will be inserted for bringing in all the creditors, passing the accounts of the trustees, and distributing the fund.    The surplus, if there be any, to be paid to Mr. Neill as trustee.    If, however, his co-executor desires that it should be paid to the executors, such will be the decree.