SOPHIE KSIAZEK

*v.*

ALEXANDER KSIAZEK.

[Decided June 12th, 1918.]

1. Sureties on a bond given to secure release from arrest on a writ of *ne exeat* may not surrender their principal and thus secure exoneration.

2. A bond in *ne exeat* conditioned that defendant will not .depart the state without leave is not discharged by the entry of final decree, nor by the fact that the defendant is in custody for failure to comply with final decree.

3. A bond in *ne exeat* with condition that defendant will not depart the state without leave is not discharged after final decree providing for the payment of alimony by the fact that the defendant has complied with the final decree to date of application for discharge.

4. The court may, in its discretion, after final decree and while the defendant is in custody for failure to comply with final decree, discharge the sureties on a bond given to secure release from arrest by virtue of a writ of *ne exeat* upon terms, and may, while the defendant be so in custody, direct the issuance of a new or *alias* writ of *ne exeat* upon a showing that there is danger if the defendant be released of his departing the jurisdiction.

On motion to discharge sureties on bond given on *ne exeat.*

*Messrs. Frey & Vanecek (Mr. John Q. Frey),* for the motion.

*Messrs. Pomerehne & Laible, contra.*

LANE, V. C.

Pending the suit a writ of *ne exeat* issued. Defendant gave bond with sureties, the condition of which was in the old form that he would not depart the jurisdiction without leave. Subsequent to final decree, an application was made by his sureties for leave to surrender him. This application was denied. Thereafter, an application was made to punish him for contempt; he was adjudged guilty and incarcerated. The sureties now apply for their discharge. That the sureties cannot surrender their principal is the law of this state. *Schreiber* v. *Schreiber, 85 N. J. Eq. 303,* Vice-Chancellor Stevenson (at *p. 306*) affirmed without criticism, *86 N. J. Eq. 437.* See, also, *In re Griswold, Petitioner, 13 R. I. 125.*

The statement in *Tothill,* reported in *21 Eng. Reprint 110,* that bail in chancery is discharged upon bringing in the principal, as at common law, does not express our law. It was this statement upon which the vice-chancellor acted who accepted a surrender of the principal in *Marino* v. *Marino,* hereafter noted.

The question is, whether the principal being in custody for contempt for failure to obey the final decree the sureties are entitled to their discharge.

In *Le Clea* v. *Trot (1704), Pr. Ch., C. & H. 230; 24 Eng. Reprint 112,* the lord keeper held that the sureties should not be discharged after answer put in by the defendant, nor even after decree against him, and commitment for £19,000 decreed against him. In *Debazin* v. *Debazin (1743), 21 Eng. Reprint 204,* it appeared that a writ of *ne exeat* sued out, the defendant entered into a bond with two sureties, for his not departing the kingdom. The cause was afterwards heard, and there was a decree against the defendant for the same matter for which the *ne exeat* issued. The defendant being in contempt and in custody for not performing the decree, the sureties applied, and obtained an order that they should be discharged and the bond as to them canceled. In *Stapylton* v. *Peill (1816), 19 Ves. Jr. 615; 34 Eng. Reprint 644,* application was made to discharge the sureties prior to final decree where the defendant was in custody for con-

tempt for failure to put in an answer, and Lord-Chancellor Eldon refused to make the order, observing that he did not recollect such a motion except once and then it was refused and the editor contributes the following note:

"See *Beames on Ne Ex. Reg. 56* in *Le Clea* v. *Trot, Pre. Ch. 230,* where this application was refused and in *Debazin* v. *Debazin, 1 Dick. 95,* where it was granted, the commitment was for not obeying the decree to pay the money, for which the writ was granted."

Upon the authority of *Debazin* v. *Debazin,* the court of appeals of Maryland, in *Johnson* v. *Glendenin, 5 G. & J. 463,* affirmed an order discharging the sureties in a case where the defendant had been committed to jail for not complying with the final decree and afterwards had escaped from custody. The arguments of counsel in this case are very instructive.

In *Wauters* v. *Van Vorst, 28 N. J. Eq. 103,* the chancellor approved *Debazin* v. *Debazin.* That case cannot be considered an authority, however, that the court must discharge the bail, the chancellor merely holding that it has the power. In *Elliott* v. *Elliott, 36 Atl. Rep. 951,* Vice-Chancellor Reed held, where the condition of the bond was in the form provided for by the rules, that, after final decree and even after a bond given to comply with the final decree, the bond on *ne exeat* was not superseded and suit might be brought upon it. Vice-Chancellor Howell, in *Marino* v. *Marino,* in an unreported memorandum (which case, by the way, was the one in which there was the irregular surrender of the principal referred to by Vice-Chancellor Stevenson in *Schreiber* v. *Schreiber*), says: "Prior to 1871 it was the practice in this state for the defendant so arrested to give bond in what was known as the common form, viz., that he would not depart from or leave this state without the permission of the court. This was considered to be practically a bond for appearance, although not so in terms, and if the defendant remained within the state until final decree the condition of the bond was held to be satisfied." He cites no authority for the *dictum.* It seems to be opposed to the English cases. In *Le Clea* v. *Trot* application was made by the sureties after final decree. So in *Debazin* v. *Debazin.* It would seem as

if had it been considered that the exigency of the writ had been satisfied by the final decree, the applications would have been based upon that ground. The condition of the bond in the common form is broken if the defendant without leave of court at any time leaves the state. Upon a breach of the condition the money may be directed to be brought into court. The court may, however, if the defendant leave the state, without permission, and thereafter return and subject himself to the jurisdiction of the court, remit the forfeiture. *In re Appel (Circuit Court of Appeals), 20 L. R. A. (N. S.) 76; 163 Fed. Rep. 1002.*

The condition of the bond is that "the defendant shall not depart from or leave this state without permission of the said court of chancery." It is unlimited as to time. The bond which may be given under the two hundred and sixteenth rule is conditioned that the defendant shall cause his appearance to be entered in the suit, continue his appearance and render himself amenable to the orders and process of the court and to such process as shall be issued to compel the performance of the final decree and to appear before the court when required. The purpose of the rule was to permit the giving of a bond which would not be as rigorous in its condition as the bond in the common form. If the bond be in the common form a single departure from the state will breach its condition. The defendant may still insist upon giving a bond in the common form. I think that if he does, he and his sureties assume practically all of the obligations which he would be under if he gave a bond under the two hundred and sixteenth rule, plus the additional obligation of continuously remaining within the state. The cases dealing with the effect of a bond given under the two hundred and sixteenth rule are therefore direct authority with respect to the effect of a bond given in the common form.

The vice-chancellor, in *Marino* v. *Marino,* after final decree, refused to vacate a bond with condition as provided for by the rule, although the defendant was within the state and was complying with the final decree, and I think the same result would have been reached had the bond been in the common form. He

further held, notwithstanding the surrender and the fact that
the defendant had been rearrested on an *alias* writ, and a new
bond given, that the old bond was still outstanding and reduced
the amount of the new bond so as to make the aggregate bail
$5,000.

The writ is not discharged by the entry of judgment, but
continues until security is given (and even after unless discharged
by order), or the judgment is satisfied. *McNamara* v. *Dwyer, 7
Paige 239; Mitchell* v. *Bunch, 2 Paige 603; Lewis* v. *Shainwald,
48 Fed. Rep. 492; Elliott* v. *Elliott, supra.* Incarceration for
contempt is not in any sense a satisfaction of the judgment or
compliance with the decree.

The cases of *Debazin* v. *Debazin* and *Le Clea* v. *Trot* are not
in conflict. The utmost effect of *Debazin* v. *Debazin* is as stated
by the chancellor in *Wauters* v. *Van Vorst,* that the court may,
where the defendant is in custody for failure to comply with the
final decree, discharge the sureties, but it is not obliged to.
An entirely different question arises as to whether or not the
court ought, in the exercise of its discretion, the defendant being
in custody, release the sureties. The fact that the final decree
has been entered and that the defendant is in custody does not
vitiate the writ of *ne exeat,* nor does it prevent the issuance of
an *alias* or new writ. So long as the defendant is in custody
for a contempt for his failure to pay certain arrears of alimony
he cannot depart the state and the complainant is not injured,
but he may satisfy the amount of arrears to date and then depart
the state and the complaiant be left remediless.

I will advise an order discharging the sureties provided the
defendant give bond to perform the final decree, or if, within a
time to be fixed, the complainant does not apply for an *alias* or
new writ upon proper moving papers indicating that if the de-
fendant be released he may depart the state.

The reasons which induce me to grant the relief which I have
above indicated are that the defendant is now incarcerated within
the state and may be held within the jurisdiction unless he shall
give a new bond on the writ of *ne exeat,* and the sureties repre-
sent that the bond has been recorded in the county of Essex

among bonds to sheriffs, and that a title company refuses to guarantee title to property owned by them which they desire to transfer. Whether a bond so recorded constitutes an encumbrance upon their land, I cannot determine in this proceeding and can give them relief only in the manner above indicated.

Settle order on two days' notice.