ORDRONAUX *v.* HELIE.

LETTERS testamentary were granted here, to the executrix named in the will of a testator, whose domicil was here, but who died during a temporary residence at Carthagena in South America. H. who had consigned goods to him at that place, proceeded thither and obtained from the United States Consul such property as by the marks he was satisfied belonged to the consignor. H. thereupon, suppressing the fact of the existence of a will in New York, obtained a grant of administration to himself, from the court at Carthagena, and under that grant, possessed himself of the testator's effects in that country. In a suit by the executrix against H.,

*Held,* 1. That H. was not accountable for the goods delivered to him by the consul, there being no reasonable doubt but that they were his own.

2. That the administration at Carthagena, was entirely ancillary and subordinate to that instituted in New York; and that the foreign administrator, on being served with process here, must account to the primary legal representative, for the assets which he has received abroad.

3. That this court will not interfere with the course of administration which the foreign tribunal has directed, or which the laws there prescribe; and the accounting here, will be limited to the assets remaining after the payment of expenses, and of debts in the foreign state, discharged in due course.

An executrix cannot set aside transfers of property, made by her testator without consideration, for the purpose of defrauding creditors.

The case of *Ordronaux v. Rey,* (2 Sand. Ch. R. 33,) referred to and confirmed.

A witness, whose examination is apparently closed, and an adjournment taken place, and another witness been examined; cannot be recalled by the party for whom he has testified, and examined anew on the subject of his former examination.

Nor can a party reserve the right to recall a witness, whose examination has been proceeded in; without the consent of the adverse party, unless the officer taking the testimony shall so direct for cause shown.

December 12, 1845; May 7, 1846.

THE bill was filed by Elizabeth Ordronaux against Sebastian N. Helie, claiming that the latter had possessed himself of a very large amount of the property and effects of her late husband, John Ordronaux, of which she claimed an account and payment to her. She claimed such payment in the first instance, on the ground of her having a lien and priority upon all the effects of her deceased husband, by force of a settlement executed between them under the French law, on their marriage in Paris, in 1815; she being at that time a resident of Paris, and bringing

to the marriage, a fortune of 300,000 francs. The grounds of this claim are stated at large, in the report of the case of *Ordronaux* v. *Rey*, (2 Sand. Ch. R. 33,) to which reference is made for the facts.

The complainant made a further claim as executrix of the last will and testament of her husband, executed here, and dated December 29, 1827. John Ordronaux was domiciled in the city of New York before his marriage, and from thence till his death. In November, 1839, he proceeded to Carthagena in South America, leaving his family in New York, and continued there until his death in August, 1841. The surrogate of the county of New York, granted letters testamentary to his widow.

The defendant married a daughter of the testator, who is dead leaving issue.

A part of the claim made upon the defendant, was in respect of dealings and transactions between him and Ordronaux, relative to which a great mass of testimony was presented, but under the view of the point taken by the court, it is unnecessary to state any portion of it here.

It should be noticed however, that Ordronaux in 1837, became insolvent, and many of the alleged transfers, if in fact made to Helie for his benefit, must have been in fraud of creditors.

After Ordronaux went to South America, Helie made several consignments of goods to him for sale, and to a large amount.

On the death of Ordronaux being made known in New York, the will of 1827, was presented for probate, and Helie opposed its admission. In December, 1841, he departed for Carthagena. On his arrival, he applied to the consul of the United States for the goods left in Ordronaux's hands at his death, and the consul delivered the same to him, so far as his right could be identified by the marks on the goods.

He then petitioned the court at Carthagena, for letters of administration of Ordronaux's effects, stating that he was a son-in-law of O., and making no allusion to any testamentary disposition. Letters were granted to him in accordance with his petition, the judgment of the court reciting that it was for the want of any personal representative, legal or testamentary.

By force of this administration, Helie became possessed of all

the residue of the property and effects which were in Ordronaux's possession at Carthagena.   A great portion of this residue, Helie claimed in his own right, as being the proceeds of his goods consigned to O. for sale.   The administration in Carthagena was granted February 5, 1842 : And letters testamentary were finally granted to the complainant by the surrogate of New York, on the 5th day of April, 1842.

These facts, with some that are stated in the opinion of the court, will suffice for a proper understanding of the decision.

Two questions of practice, upon the recalling of witnesses for a further examination, will be found fully set forth in the opinion.

*W. Curtis Noyes*, for the complainant.

*C. B. Moore* and *F. B. Cutting*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—I will first dispose of the motion to suppress certain portions of the testimony.

1. The re-examination of Mr. Verren. · Mr. V. was examined on the 12th October, 1843, in behalf of the complainant, and was cross-examined, and his testimony apparently closed.   The complainant on the same day called and examined another witness, and the examination was then adjourned to October 16th. On that day Mr. Verren appeared with the complainant, and desired to correct his testimony previously given.   To this no objection was made, and he proceeded to make the correction. The complainant followed it with a question to which the defendant objected on the ground that his examination was closed, and the examiner sustained the objection ; but the complainant insisting, the question was put.   It did not relate to any new matter or to matter arising out of the testimony of other witnesses.

I think the further examination must be suppressed.   The testimony of the witness was undoubtedly closed on the previous occasion, and the complainant was not at liberty to call him again to the subject matter of the question put after his explanation, without the leave of the court.

The further cross-examination of course falls with the re-examination upon which it ensued.

2. The testimony of Pierre Hombert. Hombert was called and examined by the complainant, on the 16th of October. The examiner adjourned till the next day, and then the complainant produced and examined Mr. Bouchaud. After his deposition was closed, she recalled Hombert, and proceeded with his deposition. He was cross-examined, then re-examined twice, with an intervening cross-examination, and then was cross-examined a third time. The complainant's counsel thereupon stated that he reserved the right to recall and re-examine Hombert at a future time, to which the defendant refused to assent. After this seven other witnesses were produced and examined by the complainant, and some others were further examined, when at length, on the 17th of November, 1843, Hombert was recalled on her part, and offered for another re-examination. The defendant objected to his further examination, but the complainant proceeded with it.

The subsequent examination of other witnesses, shows that Hombert's deposition was closed on the 17th of October. The parties have no right in defiance of the 84th Rule of the court, to recall witnesses in the manner that was pursued in this instance, and the assumption and attempted reservation of such a right by the complainant, at the close of Hombert's testimony on the 17th of October, does not affect the question in the least. The further examination of Hombert after that day, was manifestly improper, and it must be suppressed.

The complainant claims relief on two entirely distinct grounds. First, as a preferred creditor, having a lien upon all her late husband's property, by force of the French Marriage Settlement; and secondly, as the executrix of his last will and testament. -

I. As to the settlement, it was before me in *Ordronaux* v. *Rey*, (August 2, 1844,) not yet reported ;(a) and I decided that the complainant had no such lien as is now claimed, and that

(a) Now reported, 2 Sand. Ch. R. 33.

she is not entitled to a preference over other creditors of John Ordronaux.

This renders it unnecessary for me to examine the points made by the defendant's counsel, upon the sufficiency of the testimony introduced, to prove the marriage settlement.

II. The remaining claim made by the complainant, is in her capacity of executrix of J. Ordronaux.

The demands which occupy so great a space in the pleadings and testimony, are founded upon alleged transfers of property by Ordronaux to the defendant, on a secret trust for O., and for the purpose of defeating the complainant's rights and claims under her marriage settlement. She has not established such a standing as a creditor, as will enable her to set aside these transfers, if their existence and design were fully proved. Nor is her bill filed in behalf of the creditors at large, as well as herself, so as to warrant the court in treating it as a suit by creditors, to avoid fraudulent sales and conveyances. The suit is to be regarded as prosecuted by the personal representative of John Ordronaux; and in that view, it is difficult to perceive on what principle the court can be called upon to vacate his acts, however fraudulent they may have been against his creditors. Neither the common law nor the statute, avoids such acts, as against the party or his representatives.

Without resting upon this point, I am prepared to say, after an attentive examination of the testimony, that it fails to overcome the defendant's answer. Even if the answer were not responsive to the bill, it would be unsafe to charge a party upon such testimony. Ordronaux and Helie are shown to have had extensive business transactions, in which there were necessarily large payments on both sides. From their relationship, it was natural that less care should be taken by both, to preserve the evidence of their respective payments and claims; while it was equally probable that there was a frequent interchange of the checks, notes and bills of each, for the accommodation of the other, of which in their mutual confidence, no formal entries were made. Under such circumstances of fact and probability, and after so great a lapse of time, the testimony relied upon by the complainant, is altogether too vague, indefinite and general,

to enable this court to decide that the defendant is liable to ac-count, either as the debtor, or the trustee of Ordronaux.

I must decide against the complainant, in respect of all the claims brought forward in the bill prior to the death of Ordronaux.

A distinct and interesting branch of the case, arises upon the proceedings of the defendant at Carthagena, and in its vicinity, after the death of Ordronaux.

It appears that certain merchandise in the possession of Ordronaux when he died, was delivered to the defendant by the United States consul, on the defendant's claim that it was his property, before any administration was granted at Carthagena. This property was so identified by the marks remaining upon it, that the consul was satisfied of the validity of the defendant's claim. His answer, responsive to the bill, asserts such claim ; he has proved that he made large consignments of merchandise apparently his own, to Ordronaux at Carthagena; and the complainant has not shown any reasonable ground for doubting, that the merchandise delivered to him before the administration, was his own property.

I do not think that he should be required to account for this portion of the effects which he received at Carthagena.

The effects which he obtained by means of the letters of administration, stand upon a different footing. The very circumstance that he thus obtained them, makes it incumbent upon him to account for them, and to show that although they came to his hands as the legal representative of Ordronaux, they are in truth his own property. The manner in which he secured the grant of administration, ought to make any court entertaining the subject, the more vigilant to require from him a full and satisfactory account of his proceedings under the grant. It cannot be denied that he stole a march upon the executrix of Ordronaux, in taking out these letters of administration ; and that he concealed from the court at Carthagena, the important fact that Ordronaux left a last will and testament. Whether the will was executed in a form which would entitle it to respect in that court, is not material to this inquiry. It suffices that the existence of a testamentary disposition, claimed to be valid, was a circum-

stance which would evidently have retarded, if not defeated, his claim to the administration.

I feel no hesitation in holding that the defendant must account for all the effects which he received at Carthagena, and in South America, which were in the possession or charge of Ordronaux at his death, with the single exception of those delivered to the defendant by the consul prior to the grant of administration.

The inquiry remains, can he be compelled to account in this tribunal? It is clear that the domicil of John Ordronaux was in this city, and was not changed by his residence in Carthagena. Indeed, in the proceedings there upon conferring administration, he is described as "a foreigner," and as such the notices are given to the consul of "his country," that is, the United States. Aside from the superior authority conferred by his will, it is plain that the complainant is his chief and principal legal representative, and that the administration at Carthagena, was entirely ancillary and subordinate to that instituted here.

On this ground, the law appears to be well settled in this state, that the foreign administrator, his person being within the jurisdiction of this court, may be compelled to account here to the primary legal representative, for the assets which he has received abroad. Not that this court will interfere with the course of administration which the foreign tribunal has directed, or which the laws there prescribe. But for the assets remaining after the payment of expenses, and the discharge of debts in due course, in the foreign state; this court will hold the administrator there appointed, accountable when found here, to the executor or other primary representative of the decedent. It is scarcely necessary to say, that this jurisdiction would not be exercised, when the foreign administrator has fully discharged his functions in the country where he was appointed, and has no effects for which he would there be held accountable. For the principle which governs this case, I refer to *McNamara* v. *Dwyer*, (7 Paige, 239;) *Dawes* v. *Head*, (3 Pick. 128;) Story's Conflict of Laws, § 514, 514 *a. b.*, 518.

The supplemental bill appears to have failed in its principal objects. Nevertheless, as there is to be an account, and some of the matters specified in the supplemental bill will enter into the

account, I will not at this time dispose of the question of costs on that bill.

There must be a decree for an account, restricted so as to conform to the views which I have expressed; and all further questions and directions will be reserved.