McNamara and wife *vs.* Dwyer and others.

The court of chancery has jurisdiction to compel a foreign executor or administrator to account for the trust funds which he received abroad and brought with him into this state ; and that too without taking out letters of adminsitration on the estate of the decedent here. And upon a bill filed againt such foreign executor or administrator, if he is about to depart and go beyond the bounds of the state, he may be arrested upon a ne exeat and held to equitable bail, as in other cases.

In a suit here against a foreign executor or administrator, for assets received in the country where he was appointed, and brought into this state, the nature and extent of his liability will depend upon the laws of the state or country where he derived his authority to administer the assets of the decedent. And the assets must be applied in the payment of debts, or be distributed among the next of kin, according to the law of that country, and which would be applicable to the case if he had been called to account there.

A foreign executor or administrator cannot maintain a suit in this state by virtue of letters testamentary or of administration granted abroad.

It is a matter of course to order a ne exeat to be discharged, upon the defendant's giving security to answer the complainant's bill, and to render himself amenable to the process of the court pending the litigation, and to such process as may be issued to compel a performance of the final decree.

THIS was an application on the part of the defendant J. August 21. Dwyer to discharge a ne exeat, on which he had been arrested and held to bail in the sum of $15,000 ; or to reduce the amount of bail required, and to permit the petitioner to leave the state, upon his giving the usual security to answer the complainant's bill and to render himself amenable to the process of the court during the progress of the suit, and to such process as might be issued to compel a performance of the final decree therein. The petitioner resided at New-Orleans, and the complainants in this state ; and the former was on his way to Ireland when he was arrested, on the ne exeat, at New-York. The bill was filed against him for an account and distribution of the estate of P. McKeogh, who died in Ireland leaving a large real and personal estate there, and of whom Honoria, the wife of the complainant P. McNamara, together with the several defendants in this cause, were the next of kin. The bill alleged, among other things, that in 1836 the defendant J. Dwyer was appointed admin-

istrator of the estate in Ireland, and possessed himself of the personal estate of the decedent to a large amount; that he converted into money and brought to this state, in January, 1837, about $35,000 thereof, which he had subsequently misapplied by using the same in mercantile speculations, and in the purchase of real estate in New-Orleans and elsewhere; and that the complainants' share of the personal estate of the decedent exceeded the sum of $10,000. The petitioner alleged that a bill in chancery had been filed against him in Ireland, by a person claiming under an alleged will of the decedent, and that other claims were made against the estate there; that the whole sum to which the complainants would in any event be entitled, beyond what they had already received, would not exseed $4000; and that he had given security in the sum of $100,000 upon obtaining letters of administration upon the estate in Ireland. The petitioner did not state, however, that he believed that the pretended will ever would be substantiated, or that any such will was in existence; but on the contrary it appeared from his letter to the complainants, a copy of which was annexed to the bill, that he believed the pretended will could never be substantiated. Neither did the petitioner deny the allegation, contained in the complainants' bill, that the suit in the court of chancery of Ireland related solely to the real estate of the decedent in that country, the exclusive right to which was claimed by the defendant John Dwyer, as heir at law.

*William Mulock*, for the petitioner.

*C. O'Connor & A. L. Robinson*, for the complainants.

THE CHANCELLOR. There can be no reasonable doubt as to the right of the complainants to require of the petitioner equitable bail in this case, if this court has jurisdiction to call a foreign administrator to account, at the suit of the next of kin, for the personal assets of the decedent received abroad and brought into this state. The converting of the fund into real estate, instead of paying it over to the distrib-

utees or vesting it upon proper securities, was a breach of trust as to the complainants, who had not consented to this disposition of the fund. And the revised statutes have authorized executors and administrators to be holden to bail in actions brought to charge them with waste, upon affidavit of the fact that such waste or misapplication of the funds of the estate has been committed. (2 *R. S.* 448, § 34.) Even if the petitioner was a resident, he would not be exempted from arrest, upon due proof of a misapplication of the fund in his hands as administrator and that he was about to leave the state ; as the act to abolish imprisonment for debt does not apply to arrest upon mesne process out of this court, in cases of exclusively equitable cognizance. (*Brown* v. *Haff*, 5 *Paige's Rep.* 235.) Besides, it is distinctly alleged in the bill that the defendant John Dwyer had not been a resident of this state for one month previous to the commencement of this suit.

It appears to be perfectly well settled that a foreign executor or administrator cannot maintain a suit in this state by virtue of letters testamentary or of administration granted abroad. And the learned and very distinguished American commentator on the conflict of foreign and domestic laws is, evidently, of the opinion that this principle extends to suits brought against the foreign executor or administrator, to recover the property which he has received in that character. (*Story's Confl. of Laws*, 422, § 513, 514.) I have, however, after a careful examination of the several cases referred to by him, not been able to find any one in which it has been directly decided that the remedy against an executor or administrator, either in behalf of the next of kin or of the creditors, is necessarily confined to the courts of the country in which the letters testamentary or of administration were granted. Indeed to suppose such was the law, would lead to the conclusion that cases must frequently exist in which there would be a total failure of justice. It is well known, as a general rule, that executors are not required to give security upon the granting of letters testamentary to them ; so that if they remove to another state, or country, taking the proceeds of the testator's property with

1838.

McNamara
v.
Dwyer.

them, there would be no possibility of compelling them to account for the same by a resort to the tribunals of the state or country where probate of the will was originally made. And even in the case of an administrator who had given security to account, the remedy there might be unavailing, in consequence of the insolvency of his sureties. I admit that in the enforcement of the remedy, against the personal representative of the decedent, in the tribunals of another government, respect must be had to the nature and extent of his liability according to the laws of the state or country from which he derived his authority to administer the assets of the decedent; so far at least as respects that part of such assets as were within the jurisdiction of the state or country from which he derived such authority. Those assets must be distributed among the next of kin, or applied to the payment of debts, in the same manner as though the remedy was sought by the creditors, or distributees, at the place of his original appointment, although he may have removed with the assets to another country. Certainly, if a guardian appointed in one of our sister states should come into this state with the property of his ward, or after he had squandered the same or appropriated it to his own use in the state where he recieved his appointment, there could be no reasonable doubt as to the jurisdiction of this court, to compel him to account for and pay over to his ward what was justly due according to the laws of the state in which he assumed the trust. And I confess I can see no reasons for giving such a remedy here, in the case supposed, which would not be equally applicable to the case of an executor or administrator, coming into this state and bringing with him the property which had been confided to him as trustee for the creditors or next of kin of the decedent. In the case of *Logan* v. *Fairlie,* (2 *Sim. & Stu. Rep.* 248,) where an executor appointed in India, and who had proved the will there, remitted the proceeds of the estate to his agents in England to be paid over to the residuary legatees who happened to reside there, Sir John Leach supposed it was necessary for the legatees to procure the appointment of an administrator in England, to enable them to recover the

fund.  No case, however, is referred to in support of that
opinion, which was only expressed incidentally, as a decree
had already been made on the bill of the legatees.  And it
appears also to be opposed to the decision of the court of
appeals in Virginia, in the case of *Wernock* v. *McMurdo*,
(5 *Rand. Rep.* 51 ;) where it was held that the creditors,
legatees, or distributees of the decedent, and not the admin-
istrator de bonis non, were the proper persons to sue for
the proceeds of the estate which had been wasted or mis-
applied by the former executor or administrator.  The case
of *Campbell* v. *Tousey*, (7 *Cowen's Rep.* 64,) only decides
that a foreign executor or administrator cannot be sued as
such, by a creditor of the decedent, in a court of law in this
state.  But even that case shows that the creditors and leg-
atees are not without remedy, in a case where the foreign
representative has brought the assets into this state ; though
I confess I have some doubt whether he ought to be called
to account therefor, in a court of law, as an executor de
son tort.  But I can see no valid objection to a suit against
him in this court, where he may have the full benefit of his
administration of the estate abroad ; and where full and
ample justice can be administered without regard to the
technical form of the suit.  I have, therefore, no doubt but
that this court has jurisdiction, to compel the defendant J.
Dwyer to account for and to pay over to the complainants
their distributive share, of the estate of the decedent which
had been received by him in his character of administrator
in Ireland, and which was brought into this state on his re-
turn from that country in January, 1837 ; and that too with-
out taking out letters of administration here.  On such ac-
counting, however, the defendant will be entitled to all such
allowances as, by the laws of Ireland, he would be entitled
to in a suit brought against him for an account and settle-
ment of his trust in the courts of that country.

The claims made against the estate in Ireland form no
valid objection to this suit ; for if those claims are well
founded, the administrator should pay them, as soon as he is
satisfied of that fact, and should pay over the balance
in his hands to the distributees.  And if the validity of such

1838.

McNamara
v.
Dwyer.

1838.

McNamara
v.
Dwyer.

claims cannot be ascertained in time to provide for the pay
ment thereof in the final decree in this suit, the complainants
will not be allowed to receive their distributive share of the
estate until they give satisfactory security to the court to
refund, in case any claims are thereafter established against
the administrator, which the assets hereafter to be received
in Ireland are insufficient to meet.  This ne exeat was
properly allowed, upon the facts stated in the complainants'
bill.  The petition to discharge the ne exeat must therefore
be denied.

But under the general prayer of the petition for further
relief, the amount for which the petitioner has been held to
bail may be reduced; and he may have the ne exeat dis-
charged, as a matter of course, upon his giving the usual
security, to answer the complainants' bill and to render him-
self amenable to the process of the court pending the litiga-
tion, and to such as may be issued to compel a performance
of the final decree.  It only remains for me to inquire
whether the amount of the security required upon the ne
exeat is too high; and to prescribe the terms upon which
the writ is to be discharged.  The amount of the complain-
ants' claim, as sworn to, is undoubtedly founded upon the
supposition that the defendant will hereafter be able to
collect the debts still due in Ireland, and that the claims
against the personal estate of the decedent will not be
substantiated.  But the defendant's letter, which is principal-
ly relied upon to show the amount of the estate, shows that
but little can be expected from that source; though from
the petition it would appear that the administrator expects
to recover enough to pay the complainants' distributive
share, which he estimates at not more than $4000 beyond
what they have already received.  Presuming for the pres-
ent, therefore, that the claim of Mrs. Eyre against the es-
tate will be established, it will exhaust the probable amount
of assets hereafter to be received in Ireland; leav-
ing the administrator to account only for the funds and
plate mentioned in his letter of July, 1837.  Those funds,
upon the supposition that there was no stock in the Bank of
Ireland, and excluding the bonds not collected, do not

much exceed $45,000. After making a liberal allowance for the commissions of the administrator and the expenses of administration, beyond what he has probably received for the difference in exchange, the complainants' share of this fund will not probably exceed $6,500 in additon to what they have already received. The amount in which the defendant is held to bail upon the ne exeat should therefore be reduced to $9000 ; as that will be sufficient to cover ·what will probably be found due to the complainants, with interest and costs. And ·the ne exeat is to be discharged absolutely, upon the petitioner's filing with the assistant register a bond, in the usual form, with two sufficient sureties, in the sum of $9000, to be approved of by the vice chancellor or the injunction master of the first circuit ; or upon his depositing with the assistant register the sum of $7000, to be invested in the trust company, on interest, to abide the further order of the court.