ELIZABETH D. DILLARD and others *vs.* LETITIA J. HARRIS and others.

## April Term, 1874.

DECREE BY CONSENT—EFFECT.—A decree by consent of parties ordering an account in accordance with the pleadings is binding, and a waiver of all objections to the jurisdiction of the court to order the account, although it reserves until the coming in of the report all questions of dispute in the cause between the parties.

FOREIGN ADMINISTRATOR—LIABILITY IN THIS STATE.—A foreign administrator who comes within the jurisdiction of our courts, bringing with him the property of the estate he represents, or its proceeds, will, it seems, be held to account here, not in the character of administrator, but as trustee for those entitled to the effects in his hands, and a settlement in the forum of administration is not a prerequisite to the exercise of this jurisdiction.

*John Lellyett*, for complainants.
*Ed. Baxter*, for defendants.

THE CHANCELLOR :—In the month of February, 1856, John L. Harris died in Bolivar county, Miss., leaving as his

only heirs and distributees brothers and sisters and the children of a deceased sister. He owned, at the time of his death, a plantation in said county known as Indian Point, some slaves and personal property, and an interest in the profits, if any, of a partnership between him and his brother, Benjamin D. Harris, in working the Indian Point plantation. This partnership seems to have been entered into in 1854, and was only in the profits and losses, which were to be borne equally. John L. Harris contributed the land and some slaves, and it may be some stock and other personalty, and Benjamin D. Harris a larger number of slaves. Whether the partnership acquired any property during its continuance does not appear. John L. Harris left a will which was contested, and the litigation over it was not finally decided until February, 1866, by virtually setting aside the will. Benjamin D. Harris was, under the laws of Mississippi, appointed what is designated in the law of that state as an administrator *ad colligendum*, whose duty, it seems, was to collect and preserve the property and effects of the estate pending the litigation over the will, and deliver the same to the persons authorized by the probate court to receive them. On the 2d of June, 1856, he entered into bond, with John C. Burns, C. Kingsley, Joseph S. Peacock, and Joseph McGuire as his sureties, in the penalty of $80,000, payable to the state of Mississippi, and conditioned " well and honestly to discharge the office of collector of the goods, chattels, and personal estate and debts of John L. Harris, deceased, in the county of Bolivar and state of Mississippi," and make a perfect inventory thereof, and in due time return the same to the clerk of the probate court of said county, and also " deliver to the person or persons who shall be authorized by the probate court of said county to receive them."

Benjamin D. Harris continued to act as collector as aforesaid until October, 1858, when he resigned, and William H. Moore was appointed administrator *ad colligendum* in his room and stead. On the 18th of October, 1858, Moore gave

bond "as administrator *ad colligendum* of the goods and chattels, rights and credits, of John L. Harris, deceased," with Benjamin D. Harris and Joseph H. McGuire as his sureties, in the penalty of $80,000, payable to the state of Mississippi, and conditioned to "faithfully, truly, and promptly perform and discharge all the duties required of him by law or the order of the court." Benjamin D. Harris' name was signed as surety to this bond by Moore himself, under a power of attorney of the date of the 14th of September, 1858, authorizing him to apply for the appointment of the said Benjamin D. "as the legal representative" of the estate of John L. Harris, in Mississippi, and to execute any bond required to accomplish the object; or, if Moore should apply for the administration himself, "and be apppointed the legal representative of said estate," then to sign the name of the said Benjamin D. Harris as surety to any bond he may have to execute "as such legal representative." There is little doubt that the power of attorney was executed under the impression that the litigation over the will would be terminated about that time, and a regular "legal representative" appointed on John L. Harris' estate.

There is evidence in the record tending to show that Benjamin D. Harris, after his resignation and the qualification of Moore as his successor, did make arrangements to have a settlement with the probate court of his business as collector, and that the settlement was even partially made, and his accounts and vouchers filed, showing, according to them, a large balance in his favor. But the weight of evidence is that the settlement was delayed by objections taken to some of his vouchers, and was never actually made.

There is proof, also, tending to show that Benjamin D. Harris, while administrator *ad colligendum*, and Moore, as his successor, did each, under some orders of the probate court, run the plantation at Indian Point, raise crops, and ship them to market. The orders under which this was done

are not exhibited, nor has the Mississippi law on the subject been produced to the court.

On the 4th of October, 1867, the original bill in this cause was filed by some of the heirs and distributees of John L. Harris, deceased, against others of the heirs and distributees, and against Letitia J. Harris, as the administratrix of Benjamin D. Harris, he having in the meantime died, and against William H. Moore. The object of the bill is to charge the estate of Benjamin D. Harris with the goods and chattels, rights and credits, of John L. Harris, deceased, which came to his hands as administrator of the estate of the deceased, and with the rents and profits of the Indian Point plantation after the death of John L. Harris, during the period of Benjamin D. Harris' administration as aforesaid, and to charge the estate of Benjamin D. Harris, as the surety of William H. Moore on his bond as aforesaid, for the goods and chattels, rents and profits, which came to the hands of the said Moore, as administrator, or while acting as administrator as aforesaid. The bill specifies certain large sums of money, arising from the sale of crops of the Indian Point place, as having been received by the said Benjamin D. Harris while he was administrator. It also charges that Moore placed a large amount of the moneys of said estate received by him in the hands of said Benjamin D. Harris, who removed the same from the state of Mississippi, and that he held the same at his death, and they passed into the hands of the defendant Letitia, as his administratrix. The bill further charges that Moore has left the state of Mississippi, and resides in the state of Alabama, and neither he nor his sureties have any property or effects in Mississippi which can be attached. That one of his sureties, Joseph D. McGuire, still lives somewhere in Mississippi, though not in Bolivar county, but he is totally insolvent, and, therefore, the parties cannot be made to account in Mississippi.

The bill, it may be well to remark, proceeds upon the idea that Benjamin D. Harris was the regular legal repre-

sentative of John L. Harris, deceased, and that William H. Moore was the administrator *de bonis non* of the estate after the resignation of Benjamin D. Harris. This view of the character of the parties is conceded in the answer of Mrs. Harris, but the true character of the holding was set out in the answer of Moore, drawn long afterwards, and is brought out in the proof, copies of the bonds and letters of administration having been filed.

On the 7th of April, 1868, Letitia J. Harris, as administratrix of Benjamin D. Harris, filed her answer. She admits the facts of the administration of John L. Harris' estate as charged, but denies some of the charges in relation to the assets and value of crops which came to the hands of her intestate or Moore, and knows nothing in regard to others. She is satisfied that no part of the estate was ever placed in the hands of her intestate by Moore, or came to her hands. She claims that her intestate did make a settlement of his administration. In the course of her answer " she states that, previous to the death of said John L. Harris, he and her intestate formed a partnership in cotton planting, in said Bolivar county, upon what was known as Indian Point plantation, which partnership continued up to the death of the said John L." She explains that the plantation and some fifteen or twenty of the negroes belonged to John L., and also a few of the mules, but that the larger number of the negroes and mules belonged to her intestate, who was also, she thinks, entitled to three-fourths of the profit. She states, also, that John L. Harris by his will gave the plantation to the wife of William H. Moore, and that in March, 1856, three of the brothers of the said John L. Harris, viz., William H. Harris, E. B. Harris, and her intestate, by deed of gift of that date, relinquished to the said wife of William H. Moore, and her children, all their interest in the Indian Point plantation, together with such of the negroes and stock thereon as belonged to the said John L., the said brothers being entitled to one-half of the estate in case the will were set aside, as was eventually done.

At the October term, 1870, of this court, the following decree was entered on the minutes, by consent, being signed by the respective counsel of complainants, and defendant Letitia J. Harris :

" This cause came on to be heard on the 1st day of February, 1871, and on a former day of this term, when, on agreement of the solicitors of the respective parties, the clerk and master is ordered to take and state an account to ascertain the liability of the defendant to the plaintiffs (if anything) by reason of the premises stated or shown in the pleadings ; and that he make his report to the next regular term of the court. It is further ordered that the respective parties have leave to take further proof upon all questions until the first day of May next ; and that the plaintiffs have leave to show whether there are any other, and, if so, what other, heirs and distributees of the estate of John L. Harris, deceased, entitled to receive any portion of said estate ; and, if necessary, to join such other heirs and distributees parties to this suit. And, until the coming in of said report, all questions of dispute in this cause between the respective parties are reserved."

This order was at a subsequent term specially, " by agreement of solicitors of the respective parties," renewed, and the master directed to report to the next term, "until which time all other questions not heretofore determined in said cause are reserved."

On the 14th of October, 1872, by leave of the court, an amended bill is filed against Letitia J. Harris alone, setting forth the partnership between Benjamin D. Harris and John L. Harris as aforesaid, and seeking to charge the defendant, as administratrix, for partnership assets received by her intestate as surviving partner, and for conversion, waste, and default as surviving partner.

To this amended bill the defendant Letitia J. filed a demurrer, assigning three causes :

1st. That the amended bill, so far as it seeks an account of the administration of Benjamin D. Harris upon the

estate of John L. Harris, is for the same purpose as the original bill.

2d. That it fails to show that, with reasonable diligence, the demand against Benjamin D. Harris, as surviving partner, could not have been inserted in the original bill.

3d. Because the amended bill proposes to change the character of the original action and introduce a new case, and should not be allowed after the original cause had been taken up for hearing.

The first of these causes only goes to a part of the prayer of the amended bill, which is but a repetition of the prayer of the original bill, and is clearly to a matter of immaterial form, and no answer to the whole of the amended bill.

The second and third grounds are rather exceptions to the action of the court in permitting the amendment than causes of demurrer to the bill as filed. They cannot be sustained without reversing the order of my predecessor.

The demurrer must be overruled.

The case was submitted to me upon an agreement that, if I overruled the demurrer, the defendant Letitia J. Harris, as administratrix, might file pleas of the statutes of limitation of six years and of three years and six months to the amended bill; and, if these pleas were held insufficient, that the answer filed to the original bill might be taken as the answer to the amended bill also.

The original bill, it will be recollected, said nothing about any partnership between John L. Harris and Benjamin D. Harris. This fact was first mentioned in the answer of Letitia J. Harris. When the case came on for hearing, the Chancellor thought that the bill ought to be amended so as to bring this fact more clearly before the court, and the amended bill was filed accordingly. It is very obvious that Benjamin D. Harris, as surviving partner, had the right to wind up the partnership business; but it is equally clear that, when this was done, it was his duty to pay over the share of John L. Harris' estate in the

surplus to the administrator of the estate. Being both
surviving partner and administrator, the law would presume
that Benjamin D. Harris did his duty, and, after the lapse
of a reasonable time for realizing, that he, in the former
capacity, accounted to himself, in the latter capacity, for
the share of John L. Harris' estate. *Carroll* v. *Bosley*, 6
Yerg. 220. Clearly, therefore, he could be made to account
for such assets under the original bill, if he could be made
to account at all. But, inasmuch as the original bill ought
to have stated all the facts fully, the Chancellor might well
think an amendment to that effect proper. The amended
bill is, in effect, only an enlargement of the substance of
the original bill by stating facts more accurately and fully.
It is, however, an original bill, upon a new cause of action,
in so far as it seeks to charge Benjamin D. Harris' estate
directly "for waste, conversion, and default as surviving
partner." The pleas would have been good as to so much
of the amended bill, and are only too broad because filed
to the whole of the amended bill. But, as the defendant
is clearly entitled to the benefit of the pleas to the amended
bill so far as it is original, I will allow the pleas to stand
for an answer to so much of the bill, and give the defend-
ant the advantage of them to that extent. *Duncalf* v. *Blake*,
1 Atk. 53; *Bishop of Soder* v. *Derby*, 2 Ves. 357; *Sea-
right* v. *Payne*, 1 Tenn. Ch. 189.

The original bill seeks to call Benjamin D. Harris' estate
to account for his acts as administrator of John L. Harris'
estate, for crops raised on the Indian Point plantation while
he was administrator, and as surety for Moore. It seeks
to call Moore to account for his acts as administrator, and
for crops raised by him while so acting. Neither defendant
has made any objection to the relief sought upon the ground
of want of jurisdiction. The defences of Moore, if his
answer is to be considered as filed, go to the details of the
account, not to the account itself. The only defence the
defendant Letitia J. Harris, as administratrix, sets up to
the account, so far as the acts and administration of Benjamin

D. Harris are concerned, is that her intestate had made a settlement with the probate court of Bolivar county, Mississippi, by which the estate had been brought in debt to him, but this defence is not made out by the proof. As to her intestate's liability as surety of Moore, she only says she knows nothing about it, and requires proof. A certified copy of the bond is produced, which shows that Benjamin D. Harris' name is signed by Moore, as his attorney in fact, and the power of attorney is produced with it. It is argued that this power, which authorizes Moore to sign the name as surety to his bond as "legal representative," did not justify the signing of the bond as "administrator *ad colligendum.*" But the probate court of Mississippi, whose duty it was to take the bond, has decided the point otherwise, and there is nothing to show that the court was in error under the Mississippi law. Besides, the bond and power of attorney, and long acquiescence of Benjamin D. Harris, make out a *prima facie* case, which requires a defence, under oath, equivalent to a plea of *non est factum.* The defendant has not raised the issue by her answers. She ought, upon the filing of the bond, if it was not in fact the deed of her intestate, to have obtained leave to file an additional or amended answer, or made the issue by cross-bill.

The bond of Moore expressly recites that it is given by him "as administrator *ad colligendum* of the goods and chattels, rights and credits, of John L. Harris, deceased." It is obvious that the liability of the surety on this bond, unless there is some peculiar provision of Mississippi law to the contrary, which has neither been insisted on nor shown, is confined to the personal effects of John L. Harris which came to Moore's hands, and could not extend to rents of lands or proceeds of crops subsequently received. Upon this obligation, therefore, as the personal property was almost certainly lost during the recent war, without fault on the part of Moore, the liability of Benjamin D. Harris' administratrix is rather nominal than real. The rents and

crops would, it seems, be so far assets of the estate as to make the administrator chargeable therewith at the election. of the heirs.   2 How. 601 ; 33 Miss. 102.

The administratrix, as we have seen, raises no objection to the jurisdiction of the court, and sets up no defence to the account sought for her intestate's own acts, except one— the settlement with the probate court, which is not sustained by the proof.   It would be the duty of the court,. under these circumstances, in obedience to express statu- tory direction, to proceed to take cognizance of the case,. and order the account asked for.   Code, § 4321.   But the: defendant has herself voluntarily agreed, as we have seen,. that the court should order the account, and it has been ordered accordingly.   The reservation in this order can. certainly not be construed to authorize the defendant to resist the right to the account itself.   The words are : " And, until the coming in of said report, all questions of dispute in this cause between the respective parties are reserved."   But the right to an account is not a question in dispute by the pleadings, as we have seen, and, if it had. been, the dispute would be considered as abandoned by the reference.   *Compton* v. *Culberson*, 2 Dev. Eq. 93 ; *McLin.* v. *Macnamara*, 1 Dev. & B. Eq. 409.   I suggested, at the hearing, that the complainants themselves may have aban- doned the order for an account by bringing the case on for hearing before the order has been acted upon.   Upon fur- ther reflection, however, I am satisfied that this might be done in order to fix the principles on which the account, should be taken, with a view to save trouble and expense,. without interfering with the agreement of parties as evidenced. by the order.

In this view of the attitude in which the case comes before: me, it becomes unnecessary to consider the various points; which have been urged in argument.   They are settled in. advance by the pleadings and argreements.   2 Rich. Eq. 328..

I may add, however, that I had come to the conclusion. that this court would have jurisdiction to hold Benjamin D..

'Harris' estate to account for the property and effects which
·came to his hands as administrator *ad colligendum*, or under
-the orders of the probate court of Mississippi, not in his char-
:.acter of administrator, but as trustee for the heirs and dis-
·tributees. It is well settled in this state that a foreign admin-
:istrator or executor cannot be sued as such. But it is
·.equally well settled that if a foreign administrator or execu-
·tor come within our jurisdiction, and bring with him funds
·,or property belonging to the trust estate, he may be held
-:to account here, not in the character of executor or admin-
:istrator, but as trustee for those entitled to the effects in
his hands. *Beeler* v. *Dunn*, 3 Head, 90, and the able opin-
:ion of Overton, J., in *Caldwell* v. *Maxwell*, 2 Tenn. 102,
107. See, also, *McNamara* v. *Dwyer*, 7 Paige, 239 ; *Brown-
.lee* v. *Lockwood*, 5 C. E. Green Ch. 255 ; *Tunstall* v. *Pol-
.lard*, 11 Leigh, 1 ; *Moore* v. *Hood*, 9 Rich. Eq. 311.

A previous settlement of the administration in the forum
·.of appointment would be conclusive upon this court.
*George* v. *Lee*, 6 Humph. 61 ; *Alsop* v. *Alsop*, 10 Yerg.
283. If he make no settlement in the proper forum the
:parties may follow him and compel him to account in his
·own forum. They are not driven to sue sureties, nor to go
·through the forms of an account in the forum of administra-
-tion. They may do so, but are not bound to do so. *Pat-
.ton* v. *Overton*, 8 Humph. 192.

NOTE.—Since this opinion was delivered the supreme court has, at the
. January term, 1876, in the case of *Townsend* v. *Markham*, from Fayetteville,
reached the same conclusion as that embodied in the last paragraph, and
. second head-note.