## COLLINS v. STEUART.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. SUIT AGAINST EXECUTOR INDIVIDUALLY—ENFORCEMENT OF TRUST.

A decedent who was a resident of another state, and for whom an executor had been appointed therein, had held, as agent for his wife, certain bonds, which he had pledged to a bank in New York, at the time setting aside certain securities of his own to indemnify his wife in case the bonds were forfeited. *Held*, that a suit would not lie in New York, against the executor individually, to compel him to apply the securities which he had in his possession in New York, where they had been brought by plaintiff, to the redemption of the bonds and for the appointment of a receiver.

2. ENFORCEMENT OF TRUST—TRUSTEE AS NECESSARY PARTY—RECEIVERS.

Such object cannot be accomplished by the appointment of a receiver to take possession of the securities.

3. FOREIGN EXECUTORS—ACTIONS AGAINST—EQUITY.

Where the wife was originally appointed executrix, and removed the securities from the state of her appointment, and turned them over, in New York, to an executor who was appointed in her place, at her request, on discovery by her that her claim was adverse to the estate, the equity courts of New York will not take jurisdiction of a suit to compel the executor to apply the securities in redemption, and enjoin their removal, for purpose of administration, to the state from which they were taken. Rumsey and Ingraham, JJ., dissenting.

Appeal from judgment on report of referee.

Action by Florence Gaston Collins against James L. Steuart. From a judgment for plaintiff entered on report of a referee, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Theodore H. Silkman, for appellant.
Theron G. Strong, for respondent.

BARRETT, J. On the 5th of December, 1893, Walter S. Collins died. For about four years prior to his death he and his wife, the present plaintiff, lived at Englewood, Bergen county,

N. J. Mrs. Collins continued to live at Englewood for about five months after her husband's death, when she came to New York to live. Mr. Collins left a will appointing his wife executrix, and the defendant, Steuart, executor. On the 17th day of January, 1894, this will was admitted to probate by the orphans' court' of Bergen county, N. J. The defendant had previously renounced as executor, and Mrs. Collins was appointed executrix. At the time of Mr. Collins' death there was a tin box in the house at Englewood which contained certain securities. Mrs. Collins took possession of this tin box, and it was immediately removed by her relative and legal adviser, John W. Loveland, to the latter's office in New York City. This was with her acquiescence. The defendant also advised Mrs. Collins, and she acted upon his advice as well as upon Loveland's. The tin box has never since been returned to New Jersey. It has been kept in this state, and here it still remains. An examination of the contents of the box was made, upon its removal here, and three classes of securities were discovered: First, some securities which were in Mrs. Collins' name; second, some securities which were attached to an instrument signed by Mr. Collins, and dated March 14, 1889; third, general securities in Collins' name. After Mrs. Collins qualified, she found that her individual claims with regard to these securities were hostile to the estate, and thereupon she requested the defendant, as a personal favor to her, to withdraw his renunciation, qualify as executor, and permit her letters to be canceled. The defendant acceded to this request, and accordingly, upon the 21st day of March, 1894, her letters were revoked, his renunciation was canceled, and letters were issued to him. Thereupon the tin box and its contents were turned over to the defendant by Loveland at his office in this city. Nothing was done thereafter with regard to a settlement of the estate, and on the 18th of October, 1894, this action was commenced. In her original complaint the plaintiff averred that in the year 1884 she was the owner of certain bonds, mortgages, and shares of stock, which her husband took possession of as her agent; that he dealt with this property as his own, used it, intermingled it and its proceeds with his own property; that, with a single exception, its identity was lost; and that it could no longer be found, distinguished, or separated. Upon these averments she claimed that she was entitled to take so much of her husband's general property as would "be sufficient to repay the amount and value of her property thus received by him." She specified in this complaint the single exception to which reference has been made, namely, that she had traced seven of her bonds to the First National Bank of Staten Island, in this state, where they were pledged by her husband on the 14th day of March, 1889, for a loan of $6,000. She averred that the bank still holds these bonds as security for this loan. She also averred that on the day when the loan was made her husband set apart and pledged, under an instrument in writing, and delivered to himself, as her agent, certain securities, to secure her from loss in case her seven bonds should be forfeited by the nonpay-

ment of the loan. But she claimed no equity, and asked no specific relief with regard to this trust instrument, or the specific securities therein referred to. She simply asked to be paid out of the estate at large. Upon the 12th day of November, 1894, the defendant interposed an answer to this complaint, admitting, upon information and belief, all its allegations, and submitting to such decree as the court might see proper to make. Five days later the defendant consented to a reference, and upon that consent the action was referred "to hear and determine the same." The referee reported that all the securities which were found in Mrs. Collins' name had been delivered to her. He made no report upon the plaintiff's specific claim to reimbursement out of the estate generally, but confined himself to decreeing the application of Mr. Collins' entire estate to the redemption of the seven bonds pledged with the Staten Island Bank. He directed that the stocks specifically pledged by the trust instrument of March 14, 1889, be sold first, and the rest of the estate afterwards, or so much of it as might be necessary to effect the redemption of the seven bonds. What was left of the estate after such redemption was to remain in the hands of the receiver, subject to the order of the court.

As this report was a complete departure from the equity originally pleaded, the defendant consented that the complaint should be amended by averring the specific equity found by the referee, and by a prayer that the particular securities "set apart and pledged" by Collins to secure the plaintiff from loss by reason of his appropriation of the seven bonds, and so much of his estate generally as might be necessary, be sold, and the proceeds applied to the redemption of the seven bonds. The only consideration which we observe for this consent is the stipulation on the plaintiff's part that the answer theretofore served—namely, the defendant's confession of the bill—"be taken and regarded as the defendant's answer to the complaint as amended." Upon this consent an order was made upon the 14th day of January, 1895,—the very day when the referee's report was dated,—amending the complaint accordingly, and on the next day a decree was entered in accordance with the referee's conclusions. The next step in the cause was upon the 12th day of February, 1895. A stipulation was then entered into between the parties, vacating the judgment, permitting the defendant to withdraw his confession and answer anew, and referring any new issues to the original referee. Thereupon the defendant answered anew, denying substantially all the equities of the complaint, and alleging want of jurisdiction of the subject of the action; also, alleging that Collins' estate was insufficient to pay its debts, and that none of its debts had as yet been paid; also, setting up, as a defect of parties, that neither these creditors nor Collins' children had been brought in. The case was tried before the referee upon these issues, and he again reported in the plaintiff's favor. The only difference between the first report and the second is that in the first the receiver is required, after redeeming the seven bonds, to

retain any surplus of property or money subject to the further or-
der of the court, while in the second he is required to deliver
such surplus to the defendant. This shows a complete abandon-
ment of the plaintiff's original position, and the reduction of her
claim to the application of the entire estate, not to repay the
value of all the property originally received by her husband, but
simply to redeem the seven bonds. We all agree that her origi-
nal claim could not have been sustained in any jurisdiction. We
also agree that the referee's report and the judgment thereon
cannot be sustained, so far as they direct the application of the
estate generally to the redemption of the seven bonds. There is
not a particle of evidence that the securities found in the tin box
were purchased with the plaintiff's moneys, or the proceeds of
her property. Nor can such an inference be drawn from the un-
disputed facts. At the time when Mr. Collins received the plain-
tiff's property from her mother, he had his own separate estate.
That amounted, at the time of the marriage, to between sixty
and seventy thousand dollars. He was in active business down
to the time of his death. It would indeed be an extraordinary
inference that securities in such a man's possession in the year
1893 were purchased with the proceeds of any particular prop-
erty received by him in the year 1884. The only question which
we deem important is whether the judgment should be sustained
so far as it directs the application of the specific securities at-
tached to what, for convenience, may be styled the "trust in-
strument" of March 14, 1889. The solution of that question de-
pends, not merely upon the merits of the decision below, but upon
the further question whether the court should have exercised ju-
risdiction at all in the premises.

The case for the plaintiff, upon which the propriety of exercis-
ing the jurisdiction is pressed, rests mainly upon the following
facts: That she is now a resident of this state; that the defend-
ant is within this state, having his office and place of business
here; and that the certificates of stock upon which she claims a
lien are also within this state, and in the defendant's possession
here. Upon these facts the learned referee finds that this action
is properly brought against the defendant, individually, for the
relief claimed in the complaint, "notwithstanding the fact that
the defendant has his residence in the state of New Jersey," and
had been appointed Collins' executor by the Bergen county court,
in that state, and notwithstanding the further fact that he claims
to possess and hold, as such executor, the certificates of stock
upon which the plaintiff's lien is predicated. This latter claim
is founded upon the undoubted fact that he does possess and hold
these certificates as such executor. In one aspect of the case the
question whether, upon these facts, the courts of this state should
assume jurisdiction over the foreign executor, to compel him to
do his decedent's equity with regard to the specific property in
question, is not, upon the record, properly before the court. The
plaintiff has taken pains not to make the defendant a party as
executor. She makes no charge whatever against him in that

capacity. Nor does she ask any relief against him as executor. She does not aver that he has been requested, in that or any other capacity, to apply the securities in accordance with his decedent's trust duty, or that he has refused. All that she avers against him is that he intends to do his executorial duty by returning the certificates of stock to the state where they were at the time of Collins' death, and from which they were, with her acquiescence, improperly removed by her attorney, relative, and friend, Loveland. The only suggestion in the complaint of even implied hostility to her claim on the defendant's part is that he intends to administer the securities, in the regular way, through the orphans' court of Bergen county, N. J. Thus, the strange equity of the plaintiff's complaint—treated as a complaint against the defendant executorially—is his intention to rectify the original wrong whereby the res got into our jurisdiction, and his further intention, if so permitted by our courts, to administer the res in precisely the same manner as though the wrong had never been committed. These observations, however, are a deviation from the primary question, and that is as to the character in which the defendant is sued.

We agree that the manner in which a defendant is named in the title of an action is not conclusive as to its nature. The rule is that, if the averments in the complaint show that the cause of action devolves upon or exists against a party in his representative capacity, the action will have a representative character, despite the fact that the party sues or is sued individually. Beers v. Shannon, 73 N. Y. 292; Patterson v. Copeland, 52 How. Prac. 460. Here, however, although the fact of the defendant's appointment as executor is incidentally stated in the complaint, and also the fact that he claims to hold and possess the securities as executor, yet nothing is averred suggestive of a cause of action against him in that capacity. The case, in fact, proceeded against him, throughout, as an individual. The referee's report treats him as such, and grants the plaintiff relief, not as against the executor, but as against the individual, "notwithstanding the fact that he has been appointed executor." The judgment is equally precise, and in its first clause decrees that, "upon the facts established by the evidence, the action is properly brought against the defendant, individually, in this court, for the relief claimed in the complaint."

The first question, then, is, can this action be maintained against the defendant individually? It will be observed that, as an individual, Mr. Steuart is a mere depositary of the securities. In that capacity he occupies no different position from a safe-deposit company. As such, no judgment can properly be rendered against him, except to deliver the property to whoever is legally entitled to it. He cannot be required to apply it equitably, in hostility to the legal title. That can only be required of the person having the legal title, or his legal representatives. No duty to apply the property in accordance with a trust obligation is imposed upon a mere custodian,—a person who happens to have the phys-

ical possession. The latter's sole duty is to restore the property to the owner, or person having the legal title. When that duty is performed, equity can.require the latter to do his contract or trust duty, or, if he be deceased, may require his legal representatives to perform such contract or trust duty. But it is apparent that where, for instance, a complaint sets out a trust duty on the part of A., who has the legal title to certain securities, and then avers that such securities are in the hands of one B., who is not the legal representative of A., no cause of action for the enforcement of the trust is alleged against B.; that is, in a complaint against B. alone, B. owes no duty to the cestui que trust. He stands in no privity, so far as the trust duty is concerned, with either trustee or cestui que trust. His sole duty is to hold the securities, and return them, upon demand, to the person from whom he received them. Yet a judgment is sought in this action, the effect of which will be the fulfillment of A.'s original trust obligation,—an obligation to which the defendant, individually, is an entire stranger, and the duties of which are not, in his individual capacity, imposed upon him, directly or indirectly. This idea seems to have passed through the minds of the plaintiff's advisers, and they have sought to obviate the difficulty by requiring a receiver to perform the trust duty. But this is not an action in rem. One would think, from the plaintiff's attitude, that these securities were likened to a ship that could be libeled, and the trust duty enforced against the res. Not so. If Mr. Collins were alive, the action would necessarily be against him, to compel the application of the securities in accordance with his trust duty. The party whose duty it is to execute the trust must be before the court, and the court must be in a position to render its judgment against him personally, to the effect that he perform such trust duty. In case of contumacy the court may well appoint a receiver to execute the judgment, but the receiver then becomes the right hand of the court, to effect the purposes which it had lawfully decreed against the trustee. Here the only charge made against the defendant is that he has the certificates of stock in his possession in this state, and nothing whatever is decreed against him, except that he deliver these certificates to a receiver. The reason for this short cut is obvious. The court could not make a decree against the defendant, requiring him to apply the securities in his hands, because he was under no duty to so apply them. His sole duty was to restore the securities to Collins' representatives, and they alone could be required to apply such securities in execution of the specific lien which the plaintiff claims. But these representatives, viewing the case as treated in the judgment and throughout, were not parties, and no decree could be made against them. The defendant, as an individual, certainly could not cut off their rights by failing to plead nonjoinder. He might cut off his own right to have such parties brought in as were necessary for his individual protection. But his failure to do so will surely not authorize the court to seize the property, and rob the estate of even a hear-

ing with regard to it.  Here, then, the court has made the extraordinary decree that its officer take the property out of the defendant's possession, and do with it what the court has not required the defendant to do, and what it could not require him to do.  The only judgment which the court could lawfully have rendered against this defendant, individually, was a judgment that he do with the securities that which he, as their naked possessor, was legally bound to do,—that, and nothing more.  Against any other or different judgment he, as an individual, may justly complain. And, whether he complain or not, the court would not be a party to the plunder of the unrepresented estate by sustaining such a monstrous judgment as the present.  Treating the defendant as an individual, therefore, the court is practically acting ex parte. Finding the securities in the defendant's hands, it takes them out of his hands, and itself takes possession of them.  Then, without hearing any one who has a legal status to dispute the plaintiff's claim, the court adjudicates that such claim is indisputable, that she has a specific lien upon the securities, that that lien is superior to the rights of the general creditors represented by the executor, and that it (the court, not the defendant) will apply them for the plaintiff's benefit.

If the action, however, should be treated as against the estate, still the court ought not here to exercise jurisdiction.  The only property which the plaintiff had in this state at the time of her husband's death was the seven bonds pledged to the Staten Island Bank.  She had a right to redeem these bonds upon payment of the sum for which they were held as security.  She may also have had the right to require her husband's executor to apply the specific securities set apart by the trust instrument, so far as they would go, to the payment of this sum.  Doubtless, in a proper action against the Staten Island Bank for the redemption of these seven bonds, the executor might have been made a party defendant, and required, if the facts and the law justified it, to thus apply the specific securities in question.  The court would have properly exercised jurisdiction over him, as an incident to its original jurisdiction against the Staten Island Bank.  It would have done so whether he lived here or elsewhere; whether the specific securities to be applied were here or elsewhere.  It would simply lay hold of him, if found here, and require him to aid in the redemption, as far as lay in his power, and as far as he might be equitable bound to so aid.  But this is not such an action, and the court should not exercise the jurisdiction independently.  As an independent action, it stands upon the same footing as all actions in equity against foreign executors.  The claim of a specific lien is nothing more nor less than a claim against the estate to have specific property in the executor's hands adjudged to be subject to that lien.  The rule with regard to the exercise of jurisdiction in equity over foreign executors is quite well settled, although its application has frequently been lacking in precision.

Apparently the first instance in which equity has asserted jurisdiction over a foreign representative is McNamara v. Dwyer, 7 Paige, 239, decided in 1838. The defendant was an administrator appointed in Ireland, had possessed himself of the personalty of the estate, had brought it here, and was converting it to his own use. It was held that equity had power to make him account at the instance of a next of kin, without the necessity of taking out letters here. Chancellor Walworth decided that a suitor was not necessarily, and under all circumstances, confined to the original forum. He said, "Indeed, to suppose such was the law would lead to the conclusion that cases must frequently arise in which there would be a total failure of justice." The law of the original forum was, however, held to apply both as to the distribution and liability generally. Brown v. Brown, 1 Barb. Ch. 189, was decided seven years after McNamara v. Dwyer, and by the same chancellor. It was brought against Massachusetts executors by a residuary legatee, who sought to make the defendants account for their administration of the estate, and obtain a decree for the payment of the surplus found to exist to himself and others entitled. A demurrer to the bill was sustained by Vice Chancellor McCoun, who stated that the exceptional facts which justified the exercise of jurisdiction in McNamara v. Dwyer did not exist. He said:

"The complainant, in taking his share, must be left, at all events, to the operation of the lex loci, as to his rights; and, in my opinion, he must be left to pursue his remedy according to the lex fori, unless, indeed, he could show (which he has not done) that. by some act of the defendants in removing their persons or property from that jurisdiction, any remedy which he might undertake to pursue there would be fruitless."

In affirming this decree the chancellor put his decision upon the ground that the vice chancellor before whom the bill was filed had no jurisdiction; but he takes occasion to intimate, in the strongest manner, that the case is so different from McNamara v. Dwyer that the suit would not lie at all. Referring to that case, he says:

"It is sufficient to say that where this court interferes in special cases of that sort, or a similar character, it proceeds upon the principle that wherever there is a right there ought to be a remedy, either in this or some other tribunal."

In other words, the court only interferes to prevent failure of justice.

Later cases—and they are numerous—rest primarily upon McNamara v. Dwyer. The general rule resulting from a thoughtful consideration of all the cases is fairly stated by Mr. Redfield in his work on Surrogates (5th Ed. p. 413), as follows:

"They cannot be prosecuted in a purely legal action, but they are liable to an action in equity, under certain circumstances, and upon proper allegations, to prevent waste of property brought within the jurisdiction, and secure its application to the payment of the debts of the testator according to the law of the state whence they derived their authority. Their responsibility extends to assets shown to have been in their possession within this state, no matter where they have been received. And their character as foreign ex-

ecutors or administrators furnishes no objection to an action against them in a court of equity of this state in their character as trustees, e. g. where the alleged liability is not that of the decedent or his estate, but is predicated upon their own wrongful use or misapplication of trust funds which have come to their hands, or on a breach of contract made by them in their representative character."

It may be that the rule is somewhat understated by the learned writer. A failure of justice might result from other misconduct on the part of the representative than misappropriation of assets,— notably, from a wrongful refusal to submit himself to the jurisdiction of the courts of the state which granted his letters. But, without misconduct of some sort, it is difficult, if not impossible, to see how a failure of justice could result. The rule is undoubtedly broad enough to cover any case where a failure of justice will result from the refusal to exercise jurisdiction. But this failure of justice must mean failure of the justice of the appropriate forum. It is the latter principle which underlies the rule, and which is the foundation of the jurisdiction asserted by the cases. The policy of the law is that estates of decedents shall be settled, as far as possible, in one forum, not in a number. It is only where facts appear showing that the original forum will be unable to perform the duty incumbent upon it that the courts of this state will intervene. They do so to assist, not to embarrass, the original forum, and the facts must be adduced bringing the exception into play. That such a case is not made out by proof of the presence of the representative here, with possession merely of the certificates representing the shares of stock, is shown in the most convincing manner by the facts in the present action. These certificates were not brought here by the defendant, but by Loveland, her friend and adviser. They were brought here even before the plaintiff became executrix of the estate, and while she was still living in New Jersey. The talk of exercising jurisdiction because they were "found" here is, under the circumstances, ludicrous. The plaintiff alleges in her complaint "that said defendant intends to take said property, as being the property of said Walter S. Collins, deceased, from the state of New York to the state of New Jersey, for the purposes of administration," and has enjoined him from so doing. The invocation of the doctrine discussed to such a state of facts is grotesque. The court becomes the wrongdoer, prevents the defendant from doing his duty, and then assumes jurisdiction because of the wrong which it, and not the defendant, has committed. It is impossible for a failure of justice to result when there is not a hint against the defendant's management of the assets, except that he is about to return them to the jurisdiction which has the right to them, for distribution according to law. If the plaintiff has a specific lien upon the securities in question, she can enforce it in equity in New Jersey quite as readily as here. If the certificates had remained where they were at the time of Mr. Collins' death, the plaintiff would have had to file her bill in the court of chancery of New Jersey to enforce her specific lien. There can be no failure of justice so long as she is not deprived of the right which she had at the time when her agent, without the slightest authority, committed the wrong of tak-

ing the certificates out of the original jurisdiction. She cannot deprive the court of chancery of New Jersey of its proper jurisdiction in the premises, nor can she successfully invoke our aid in that respect by wrongfully bringing the certificates into our jurisdiction, and by subsequently coming to live here. The sooner the wrong is remedied, and the certificates put back where they were at the time of Mr. Collins' death, the better for the orderly and decent administration of justice, as well as for the orderly and convenient administration of decedent's estates.

Further than this, the facts show that the defendant has colluded with the plaintiff throughout. The plaintiff testified that she acted originally upon his advice as well as upon that of Loveland. The defendant himself testified that he withdrew his renunciation, and became executor, at Mrs. Collins' request, and as a personal favor to her. This was after he learned that Mrs. Collins would probably have to assume a position hostile to the estate, and bring suit. When the suit was brought he confessed the bill, as we have seen, and submitted to such judgment as the court should see proper to make. The defendant was called as a witness for the plaintiff upon the original hearing before the referee, but offered no evidence in his own behalf. After the entry of judgment he seems to have come to a realizing sense of what he had done, for the stipulation upon which the first decree was vacated recites that defendant had "raised the question whether he was protected by said proceedings and judgment, and desired a further opportunity to plead and submit further proofs and arguments." One of the conditions of this stipulation was significant, namely, that defendant should not remove the assets from the jurisdiction. The defendant's offices were adjacent to Loveland's (who acted for plaintiff in the probate of the will), and they had often talked over the matter in a friendly way. It was in Loveland's office that the assets were turned over to the defendant upon his appointment as executor. Between March, 1894, when he received the assets, and January, 1895, when he was first enjoined from removing them, he allowed them to remain in New York, and made no effort to settle up the estate in New Jersey. It is hard to avoid the conclusion that, as far as in him lay, he was endeavoring to keep the estate where the plaintiff might have ready access to it, and the distributing court might not, and that the first indication of a change of purpose was due to an awakening fear that such a course might, despite the judgment of a court of this state, subject him to serious liability. It would be a just ground of reproach against the courts of this state if they upheld a jurisdiction acquired as this has been. The courts of New Jersey would be justified in disregarding such a proceeding as this on the ground of want of jurisdiction, or in enjoining the prosecution of the action, as was done in a similar case. Hutton v. Hutton, 40 N. J. Eq. 461, 2 Atl. 280.

These considerations are applicable to any view which may be taken of the trust instrument. The legal title to the shares was not thereby given to Mrs. Collins, but, at the very outside, an equitable right to their application upon the happening of the contingency specified therein. The instrument assigns the shares to her "to

secure her from loss in case the [seven] bonds shall be forfeited by the nonpayment" of Collins' note given to the Staten Island Bank. And it authorizes "the proper persons to make the transfer of said shares on the happening of the contingency" therein stated. There is no allegation that the contingency has happened, or that the bonds have been forfeited. The shares have never been transferred to the plaintiff by the "proper persons," or at all. On the contrary, some of them have actually been transferred since Collins' death to the defendant, as executor, and a new certificate issued to him. The rest remain in Collins' name on the books of the various corporations. Some of the certificates have disappeared entirely, e. g. the five shares of the Swan Lamp Company. Some are presumably shares in foreign corporations, and all of the certificates which were found attached to the instrument are dated months—some of them years—after the date of the instrument itself. When they were actually attached to the instrument by Collins, it is, of course, impossible to say. The instrument was never delivered. The securities were never delivered. Collins retained both the instrument and the certificates. · The situs of the property was the domicile of the owner. That situs was not changed by the removal of the pieces of paper which represented the property,—especially by their unauthorized removal. The delivery of the certificates to the plaintiff would not aid her. She could not have them transferred to her name without the aid of a court of equity in an action to which the executor, as well as the corporations, would be a necessary party. Even a purchaser from the receiver would be compelled to resort to a court of equity to secure the same relief, and in his action the executor, as well as the corporation, would be a necessary party. It is apparent, therefore, that, however the trust instrument may be viewed,—whatever rights, legal or equitable, were by it conferred upon the plaintiff,—the estate must be heard before the shares can be transferred to her, or applied for her benefit. She comes into court here, claiming no legal right, but planting herself specifically on her equitable right to have the securities applied to the redemption of her bonds. The judgment proceeded upon that claim, and is limited to its recognition. It is that view of the case, and the judgment founded upon it, which we are called upon to review. Our conclusion is that the estate is entitled to a day in court before it can be deprived of the shares in question; that that day in court should be had in the jurisdiction where Collins lived and died, where his property was in fact, and where it had its legal situs, and where the will was probated and letters testamentary were issued. We are asked to retain jurisdiction, not to prevent a failure of justice, but to prevent the due and normal administration of justice in the proper forum.

The judgment should be reversed, and as, in the view which we have taken, no recovery could be had upon a new trial, the complaint should be dismissed; but, because of the defendant's course, without costs of the appeal, or of the court below.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

RUMSEY, J. (dissenting). While conceding, as we must, that the judgment, in its present shape, cannot stand, I regret that I cannot agree with the majority of the court in the final disposition which is to be made of this case. I do not think that the charges of fraud or collusion are fairly to be sustained by the evidence. It may properly be inferred, as I think, that this property was brought into this state merely for purposes of convenience, and that when that was done Mrs. Collins had no other intention than to subject herself to the jurisdiction of the courts of New Jersey for the adjudication of her rights. She says—and there seems to be no reason to doubt the truth of what she says—that she renounced as executor, and that Steuart was appointed and qualified, because of the inconvenience which would result if she, as executrix, attempted to pursue her claim against the estate. When Steuart was appointed these securities were within this state, certainly by no act of his. It cannot be said that because he was willing that this claim, which is manifestly just, should be adjudicated upon by the courts of this state, he was in collusion with the plaintiff, or willing to defraud the estate of which he was executor. Disregarding the charges of fraud and collusion, it seems to me the case is a very simple one. The objection to maintaining the action arises from the fact that the estate, as such, is not represented. Without discussing the question whether it is necessary that the estate should be represented, it seems to me that that objection is not an inseparable one, for which the complaint should be dismissed. No objection that there was a defect of parties was taken by the defendant. So far as he is concerned, therefore, he has waived it. Code Civ. Proc. §§ 33, 498, 499. It can only be taken advantage of when it is apparent that a complete adjudication as to the rights of the parties require that other persons should be brought in. The law says that when that appears the court must require other parties to be brought in, if that can be done. Code Civ. Proc. § 452. That it can be done in this case, I have no doubt. It is quite true that there is not now in this state an executor of this estate appointed by our own courts. But the plaintiff, who is a creditor of the estate, and a large quantity of the assets of the estate, are within our jurisdiction. It is clearly within the power of the courts, upon the petition of a creditor, to appoint an ancillary administrator, who shall take possession of these assets, and hold them, subject to the jurisdiction of this court, until the claims of the domestic creditors shall be adjudicated. Dawes v. Head, 3 Pick. 127, 145; Harvey v. Richards, 1 Mason, 381, Fed. Cas. No. 6,184; Story, Confl. Laws, 715 et seq. This mode of proceeding is recognized as proper for the protection of our own citizens, and is frequently pursued. I think an opportunity should be given in this case for the plaintiff to do it. The principle laid down by the majority of the court is farreaching, and, in my judgment, may be productive of great inconvenience. It cannot be limited merely because of the difficulty of applying it. It must control whether the property be in New Jersey or in India; wherever a civilized nation has courts for the adjudication of the rights of property. Within the principle which that sought to establish in this case, if the executor has been appointed by the courts of New

Zealand, we would have no discretion, but must dismiss the complaint, and remit our own citizens to an application to the courts of that distant country to obtain those rights which the judicial machinery of this state is perfectly competent to give. I think that no such rule should be adopted, unless it is absolutely necessary, and it does not seem to me that that necessity exists, in view of the facts of this case. For that reason I must. dissent from so much of the judgment as dismisses the complaint.

INGRAHAM, J. (dissenting). I cannot concur in the disposition of this case by my associates. The opinion of the court states that the first question, "then, is, can this action be maintained against the defendant individually?" It seems to me that the first and only question in the case is, can this action be maintained to foreclose the lien of the plaintiff on the securities mentioned in the transfer or pledge made by Collins, whereby he substituted these securities in place of the bonds of the plaintiff that he had misappropriated by pledging them as security for his note? Assuming that by that transfer, or agreement to substitute, a lien was created in favor of the plaintiff in these securities, it seems to me clear that she has the right to resort to a court of equity to foreclose that lien, and require the application of these securities to the redemption of her property pledged by Collins. The rule is, as stated in 18 Am. & Eng. Enc. Law, p. 667:

"Outside of agreement by the parties, and the operation of statute law, the right of the pledgee to foreclose the title of the pledgor is enforced by filing a bill in chancery, and having a judicial sale under a regular decree in foreclosure, or by selling without judicial process, upon giving reasonable notice to redeem."

And in Briggs v. Oliver, 68 N. Y. 339, Andrews, J., says:

"In case of a pledge, the right of a pledgee to come into equity to obtain a decree for the sale of the pledge exists, although a valid sale may be made without judicial action or decree."

I do not understand it to be questioned but that plaintiff had such a cause of action, and that such a cause of action is transitory, not dependent upon the residence of the parties. The plaintiff is a resident of this state, and the stock upon which the lien exists is within the jurisdiction of the court. The plaintiff having a plain right to commence an action to foreclose her lien upon the property, she makes the person in whose custody the property is, who claims to own it as a foreign executor, a party defendant. The owner of the property, who created the lien, is dead. He cannot be made a party to the action. His title to the property has vested in the defendant, his executor, under letters issued by a foreign state, and this title to the property is set forth in the complaint; and defendant's appointment as the foreign executor, and the claim under which he holds the property, are alleged. The pleadings themselves clearly show the title he claims, and under which he threatens to remove the property from the state, and to compel the plaintiff to resort to a foreign tribunal to enforce her right in the property over which she has a lien.

It seems to me that it is entirely immaterial whether or not the defendant is described in the summons as the executor of Collins. The fact that he is in possession of the property, that he claims to own it and the right to dispose of it, and that such claim arises because of the grant of letters of administration in a foreign state, to me is a plain statement of his title to the property and his interest therein. The cause of action having existed in favor of the plaintiff; the plaintiff having made a party to the action all persons interested, or claiming an interest, in the property; the plaintiff being a resident of this state; the property being within this state; the defendant being engaged in business here, and having been served with process in the state,—I can see no reason why the court should refuse to entertain the action, and to give the plaintiff the relief to which it is conceded she is entitled. The opinion of the court holds that she is bound to go to the state in which this defendant was appointed executor, and obtain there the relief to which she is entitled. Upon what principle, however, can a resident of this state be refused relief because a foreign state has appointed an executor who has an interest in the property sought to be affected by the decree? The fact that this foreign state adjoins our state is not material. The court would be bound to follow the same course if the decedent had been a resident of Australia, Africa, or Asia; and thus a citizen and resident of this state would be compelled to resort to a court of any foreign country of which the deceased happened to be a resident, to enforce a lien on securities in his favor created in this state, and when the property subjected to this lien is located here, and the court has jurisdiction over the person of the individual in whom the legal title is vested. Such a rule, I believe, has never before been enforced in any court. The general rule that letters testamentary or of administration give no authority to sue or be sued in a jurisdiction other than that in which the letters were granted is not disputed. The right, however, of such a foreign executor or trustee to resort to the courts of another jurisdiction, in which property belonging to the estate of which he is executor or trustee is located, to recover possession of such property, is well settled; and in such an action he does not sue in his representative capacity, but in his own right, as the legal owner of the property. It might be necessary for him, upon the trial of such an action, to prove the will, and put it in evidence, for the purpose of showing his title, but it would not have been necessary for him to have the will admitted to probate in this state. See Toronto General Trust Co. v. Chicago, B. & Q. R. Co., 123 N. Y. 45, 25 N. E. 198. His right to sue depends upon his being the legal owner of the property, the title to which has vested in him by virtue of the decree of the foreign court granting the administration. Now, what is the position here? The plaintiff has a lien upon certain specific property in this state; said property being held by the defendant, who has the legal title in consequence of the grant of letters testamentary by the courts of New Jersey. The plaintiff, having an equitable lien upon such property, comes

into the courts of this state, making the defendant, the legal owner of the property, a party to the action, and asking for the enforcement of such lien. If this property had been in the possession of the plaintiff, the defendant could have sued her to recover possession, upon the principle stated in the case above cited, as the legal owner of the property, not as executor of the estate. The position being reversed, and the defendant, as such legal owner, being in possession of the property, and claiming to own it, with power to maintain, as such owner, an action in the courts of this state to recover its possession, why is he not the proper and only necessary party in an action to enforce a lien upon such specific property and have it applied to the satisfaction of such lien? The distinction between this cause of action and the cause of action by which a claim against the estate generally is sought to be enforced seems to me clear; and while I agree with my associates that an action against the estate, to recover a claim against it, cannot be maintained here, in the absence of ancillary letters issued in this state, I think the cause of action that asked for the enforcement of this equitable lien upon this specific property was properly brought, and that the defendant was a proper party defendant individually; and certainly, as there is no objection in the answer to the nonjoinder of the representative of the estate, the objection that such representative is not a party to the action has been waived. The result of the principle adopted by the majority of the court is this: We will allow a nonresident executor to come into the courts of this state, and recover possession of property, the legal title to which was vested in the testator, without requiring him to receive authority to act from the courts of this state. He having thus obtained such possession as owner, we refuse to allow one of our own citizens to enforce a lien which she has upon such property, sending her to the foreign jurisdiction under which the executor was appointed. In other words, the title which the executor acquired by the issue of letters testamentary is sufficient to enable him to sue in the courts of this state for the recovery of the property which had belonged to his testator, but is not sufficient to subject him to an action by which it is sought to recover from him such property. From this I dissent.

I am of the opinion, therefore, that the judgment should be modified by directing that the property mentioned in the third clause of the judgment, which is the property described in the instrument of March 14, 1889, be sold, and the proceeds thereof applied towards the payment of Collins' note to the bank, and that the balance of the property described in the complaint be delivered to the defendant.